FILED & ENTERED

FEB 10 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>LAWRENCE EUGENE FORESTER and VICKI LOVELL FORESTER,<br><br>           Debtors. | Case No.: 6:10-bk-16163-WJ<br><br>CHAPTER 13<br><br>**MEMORANDUM OF DECISION CONVERTING PENDING MATTERS TO AN ADVERSARY PROCEEDING** |

### I. INTRODUCTION.

Currently pending before the Court are two motions by the debtors, Lawrence and Vicki Forester ("Debtors"): (a) a motion to void the mortgage of Citibank, N.A. [docket #105] ("Motion to Avoid Lien") and (b) an objection to the proof of claim of Citibank, N.A. [docket #110] ("Motion to Disallow Claim"). For the following reasons, the Court hereby converts both matters to an adversary proceeding. The Debtors should file an adversary complaint within thirty days.

### II. THE FEDERAL RULES OF BANKRUPTCY PROCEDURE REQUIRE AN ADVERSARY PROCEEDING.

The Debtors filed this chapter 13 bankruptcy case almost eleven years ago. Much time has passed and, after many years of delay, the Debtors seek certain relief. In summary, Citibank, N.A. has a junior mortgage against the residence of the Debtors and the Debtors seek to accomplish the following: (a) void that mortgage, (b) pay Citibank nothing, (c) disallow the secured proof of claim of Citibank, (d) not allow or pay through the chapter 13 plan any unsecured claim of Citibank and (e) discharge the debt of Citibank. Without suggesting any of these goals are achievable eleven years later with any procedure (the Court has considerable doubts), it is clear that procedural fairness to Citibank requires, at a minimum, that the Debtors commence an adversary proceeding if they continue to seek such relief.

Specifically, Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (as it existed in 2010 when this case was filed[1]) states that an adversary proceeding is required to "determine, the

---

[1] This bankruptcy case was filed in 2010 and, therefore, is governed by the Federal Rules of Bankruptcy Procedure in effect in 2010. Under those rules, bankruptcy courts had divergent views regarding whether a junior mortgage could be avoided without an adversary proceeding. Some courts permitted avoidance of liens by motion and others required an adversary proceeding. For the reasons set forth in the extensive case authority cited in the next several pages, this Court concludes an adversary proceeding is necessary to avoid a lien.

The Court does note that, about seven years after the filing of this bankruptcy case, Rule 7001(2) was amended as of December 1, 2017 and now may permit avoiding of liens by motion. However, that amendment does not automatically apply retroactively. The order of the United States Supreme Court approving the 2017 amendments states that the new amendments "shall govern in all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Based on this language, the revised rules cannot apply in this case for two reasons.

First, when the rules were revised in 2017, this case was not "then pending." The Debtors filed this case in 2010 and completed their plan in 2013 and the case was closed in 2013. It remained closed for six years until the Debtors filed a motion to reopen the case in 2019. Thus, in 2017, the case was not "then pending". The case was

validity, priority, or extent of a lien or other interest in property . . . ." Through the Motion to Avoid Lien, the Debtors seek an order finding that the Citibank mortgage is not valid, has no priority and does not constitute a lien against the residence of the Debtors. Hence, an adversary proceeding is necessary under the plain language of Rule 7001(2). See Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995) ("Initiation of an adversary proceeding is a prerequisite to challenging 'the validity or existence' of a lien against property of the estate in a Chapter 13 proceeding, id., and no such proceeding was initiated here."); In re Mansaray-Ruffin, 530 F.3d 230, 234-37 (3rd Cir. 2008) ("Federal Rule of Bankruptcy Procedure 7001 sets forth matters that may only be resolved through an 'adversary proceeding,' including the determination of the 'validity, priority, or extent of a lien or other interest in property.' Fed. R. Bankr.P. 7001(2). An adversary proceeding is essentially a self-contained trial—still within the original bankruptcy case—in which a panoply of additional procedures apply. See Fed. R. Bankr.P. 7001–7087. Many of these procedures derive in whole or in part from the Federal Rules of Civil Procedure, giving an adversary proceeding all the trappings of traditional civil litigation. For example, Federal Rule of Bankruptcy Procedure 7003 adopts wholesale Federal Rule of Civil Procedure 3 and thus requires the filing of a complaint to commence an adversary proceeding. Adopting and modifying portions of Federal Rule of Civil Procedure 4, Federal Rule of Bankruptcy Procedure 7004 requires the service of a summons and a copy of the complaint. Federal Rule of Bankruptcy Procedure 7012 provides that the defendant has 30 days to file an answer after the issuance of the summons and makes Federal Rule of Civil Procedure 12(b)-(h) applicable in its entirety, thus allowing, inter alia, all of the 12(b) defenses, motions for a more definite statement, and judgments on the pleadings. Moreover, an adversary proceeding offers the parties the same

---

closed in 2017.

    Second, given all the procedural missteps by the Debtors in the case discussed in this decision (i.e. the failure to properly serve the chapter 13 plan, the failure to diligently obtain an order at the beginning of the case, the failure to obtain an order at the end of the chapter 13 plan process in 2013 and the six year delay in bringing the Motion to Avoid Lien it would not be "just and practicable" to utilize the amended rules in this case.

    Had the Debtors acted diligently during the years the case was pending (2010 to 2013), the amendments to the rules in 2017 would not be available to the Debtors because, of course, they did not exist during the period from 2010 to 2013. So, it would not be "just" or "practicable" to allow the use of rules that would not have even existed had the Debtors acted timely.

opportunity for discovery as traditional civil litigation, and the rules regarding voluntary and involuntary dismissals, default judgments, and summary judgment are identical as well. See Fed. R. Bankr.P. 7026–7037, 7041, 7055–7056 (making Fed.R.Civ.P. 26–37, 41, and 55–56 applicable to adversary proceedings).  The Rules are binding and courts must abide by them . . . . It is appropriate that the Rules permit lien invalidation to occur only through litigation in an adversary proceeding—and not through a provision in a plan—for the invalidation of a lien on the property of the debtor held by a specific creditor is a matter of particularly great consequence, in terms of the applicable legal principles and the practical result.  As discussed above, an adversary proceeding provides the lienholder with 'greater procedural protection,' Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 451, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004), requiring a complaint and a summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion."); In re Ginther, 427 B.R. 450, 456 (Bankr. N.D. Ill. 2010) ("There is some disagreement among courts over whether a debtor seeking to strip-off a completely underwater junior mortgage must do so through an adversary proceeding, or if it can be accomplished through a motion or simply through a plan . . . .  However, this Court agrees that the Bankruptcy Rules require an adversary proceeding. Fed. R. Bankr. P. 7001(2) defines a proceeding 'to determine the validity, priority, or extent of a lien or other interest in property' as an adversary proceeding."); Wright v. Commercial Credit Corp., 178 B.R. 703, 705-06 (E.D. Va. 1995) ("When a party asks the bankruptcy court to determine the extent of a lien or the value of the collateral forming the basis of the lien, adversary proceedings are required, as contemplated by Bankruptcy Rule 7001(2) and Bankruptcy Rule 3012. . . . .  Accordingly, the Court affirms the Bankruptcy Judge's finding that an adversary proceeding is necessary before appellee Commercial Credit Corporation's status as a secured or unsecured creditor is determined based on the valuation of the property underlying appellee's lien."); In re Forrest, 424 B.R. 831, 836 (Bankr. N.D. Ill. 2009) ("Under the Bankruptcy Rules, the Bankruptcy Code, and the Constitution, Forrest may not strip off Litton Loan Servicing's wholly unsecured junior mortgage on her home through her Chapter 13 Plan.  The Code forbids modification of the lien through a plan, the Bankruptcy Rules require an adversary proceeding for such relief, and Constitutional

Due Process entitles Litton Loan Servicing to heightened notice through a complaint and service of summons in an adversary proceeding."); In re Smith, 514 B.R. 331, 338-39 (Bankr. S.D. Ga. 2014) ("I hold that the procedural safeguards inherent in that rule should not be disregarded based on narrow definitions of 'validity' adopted by many courts. The Due Process Clause of the Fifth Amendment forbids the deprivation of a property right without due process of law, and the adoption of a Rule of Procedure by the judiciary constitutes the template for assessing due process . . . . [A]ny challenge to the viability of a lien must be considered within the confines of an adversary proceeding under the Rules and as a matter of due process. . . . [P]art of the purpose of Rule 7001 must certainly be to ensure that when the issue is the enforceability of a state created lien, the defendant is entitled to the most infallible degree of notice of the nature and serious consequences of the proceeding brought against it. The procedural safeguards of adversary proceedings, including the Rules of Pleading of Bankruptcy Rule 7008 which require a specific 'demand for relief sought,' are calculated to achieve this purpose."); In re Enriquez, 244 B.R. 156, 158 (Bankr. S.D. Cal. 2000) (holding that if a chapter 13 debtor seeks to extinguish a junior mortgage "an adversary proceeding must be brought." Lien-stripping in chapter 13 "cannot be obtained without commencement of an adversary proceeding."). In re Gates, 214 B.R. 467, 470 (Bankr. D. Md. 1997) (noting that a "contest between debtor and creditor regarding the value of a given secured claim should not be heard in the context of confirmation, but rather in a separate adversary proceeding as governed by Federal Rules of Bankruptcy Procedure 3012 and 7001."); In re Kressler, 252 B.R. 632, 635 (Bankr. E.D. Pa. 2000) ("Our holding today that a debtor may not cramdown and avoid a secured creditor's lien through the plan confirmation process without first taking an 'affirmative step' such as filing an adversary complaint to avoid the lien or filing an objection to the secured creditor's proof of claim, which, if the objection seeks a determination of the validity, priority or extent of the creditor's lien, will become an adversary proceeding, see Fed.R.Bankr.P. 3007, has support in the caselaw, see Cen–Pen Corp. v. Hanson, 58 F.3d 89, 92–94 (4th Cir.1995); Sun Finance Co., Inc. v. Howard (Matter of Howard), 972 F.2d 639, 641–42 (5th Cir.1992); Foremost Fin'l. Serv. Corp. v. White (In re White), 908 F.2d 691 (11th Cir.1990); Simmons v. Savell (In re Simmons), 765 F.2d 547, 552–59 (5th Cir.1985); In re McKay, 732 F.2d

- 5 -

44, 45–48 (3rd Cir.1984); Wright v. Commercial Credit Corp., 178 B.R. 703, 705 (E.D.Va.1995); Bisch, 159 B.R. at 548–50; Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy), 130 B.R. 318, 320–21 (9th Cir. BAP 1991); Spadel v. Household Consumer Discount Co. (In re Spadel), 28 B.R. 537, 539–40 (Bankr.E.D.Pa.1983), see also In re Siciliano, 167 B.R. 999, 1017 (Bankr.E.D.Pa.1994); Owens v. Fleet Mortgage (In re Owens), 132 B.R. 293, 296–97 (Bankr.E.D.Pa.1991), and is derived from both a literal reading of the Bankruptcy Rules and a concern for protecting the due process rights of the secured creditor.  While we recognize that some courts have permitted debtors to cramdown and avoid a secured creditor's lien solely through the plan confirmation process . . . we disagree with this approach and decline to follow it."); In re Pierce, 282 B.R. 26, 28 (Bankr. D.Utah 2002) (holding that a chapter 13 debtor who wishes to lien strip a junior mortgage must file an adversary proceeding and stating: "The Debtors have properly brought this issue before the court in the posture of an adversary proceeding. While a few courts have entertained this issue via motion in a contested matter or through an objection to claim, the Court follows the plain language of Federal Rule of Bankruptcy Procedure 7001(2) which states: '[A] proceeding to determine the validity, priority, or extent of a lien or other interest in property' is an adversary proceeding, which is supported by the majority of courts which have looked at the issue."); See also, Sun Finance Co., Inc. v. Howard (In re Howard), 972 F.2d 639 (5th Cir.1992); In re Vankell, 311 B.R. 205 (Bankr. E.D. Tenn. 2004).

In addition, Rule 3007(b) of the Federal Rules of Bankruptcy Procedure provides that when a party seeks to both object to a proof of claim and seeks other relief set forth in Rule 7001 (such as avoiding a lien), both forms of relief should be brought in an adversary proceeding. See, e.g., In re Kressler, 252 B.R. 632, 634 (Bankr. E.D. Pa. 2000) ("Instead, the Rules require that a proceeding to determine the extent, validity or priority of a lien be instituted by complaint. Fed.R.Bankr.P. 7001(2).  If an objection to claim is filed which includes a request for a determination of the extent, validity or priority of a lien, the Rules provide that the objection to claim proceeding becomes an adversary proceeding. Fed.R.Bankr.P. 3007."); In re Gates, 214 B.R. 467, 470 (Bankr. D. Md. 1997) (denying a motion to alter a court order overruling the objection by a chapter 13 debtor to a secured claim and noting that a "contest between debtor and

1  creditor regarding the value of a given secured claim should not be heard in the context of

2  confirmation, but rather in a separate adversary proceeding as governed by Federal Rules of

3  Bankruptcy Procedure 3012 and 7001.").

### III.   PROCEDURAL FAIRNESS REQUIRES AN ADVERSARY PROCEEDING.

In addition to the requirements of the Federal Rules of Bankruptcy Procedure, procedural fairness requires an adversary proceeding for several additional reasons.  First, Citibank was not properly served with the chapter 13 plan.  Second, the Debtors did not satisfy the requirements for a chapter 13 case that seeks to avoid a junior mortgage.

With respect to the former, the Debtors failed to properly serve Citibank with the chapter 13 plan in this case.[2]  The chapter 13 plan proposed to extinguish Citibank's mortgage

---

[2] Confirmation of a chapter 13 plan is a contested matter.  Creditors may object to the plan and, indeed, the chapter 13 plan filed by the Debtors in this case specifically stated that "creditors may object to this Plan being confirmed pursuant to 11 U.S.C. § 1324.  Any objection must be in writing and must be filed with the court and served upon the Debtor . . . ."  See Docket #38, page 1.

Pursuant to Rule 9014(b), contested matters require service that complies with Rule 7004 but that did not occur in this case.  The Debtors never served an officer of Citibank with the chapter 13 plan.

Pursuant to F.R.B.P. 7004(b)(3) and 7004(h), a moving party must serve the appropriate named officer of the lienholder.  Service that is not upon an officer is void.  Beneficial Cal., Inc. v. Villar (In re Villar), 317 B.R. 88, 93 (9th Cir. BAP 2004) (reversing an order granting lien avoidance under section 522(f) and holding that service of a 522(f) motion upon "Beneficial, P.O. Box 60101, City of Industry, CA 91716-0101" did not comply with Rule 7004(b)(3) and stating that "service was insufficient under the plain words of Rule 7004(b)(3).  In order to assure that the party being served is apprised of the pendency of an action, valid service requires more than to address the document to a post office box."); Jacobo v. BAC Home Loans Servicing LP, 477 B.R. 533 (D.N.J. 2012) (holding that a confirmed chapter 13 plan which sought to cramdown a mortgage on real property was not binding upon the secured creditor because the debtor failed to serve an officer as required by Rule 7004(h) and, instead, only served the creditor as follows: "BAC Home Loans/Countrywide 450 American Street, #SV416 Simi Valley, CA 93065, and Bank of America, 4161 Piedmont Pkwy NC4-105-01-34, Greensboro, NC 27410-8119."); York v. Bank of America, N.A. (In re York), 291 B.R. 806, 811 (Bankr. E.D. Tenn. 2003) (holding that "the original summons was not addressed to an officer by either name or title.  As a result, it was not proper service under Rule 7004(b)(3)."); Braden v. General Motors Acceptance Corp., 142 B.R. 317 (Bankr. E.D. Ark. 1992) (holding that service of a complaint by a debtor upon "the defendant General Motors Acceptance Corporation . . . at 'P.O. Box 988, Blytheville, AR 72315'" failed to comply with Rule 7004(b)(3)); see also In re Bolden, 2014 Bankr. LEXIS 699 (Bankr. M.D.Fla. 2014) (holding that service of a 522(f) motion upon "Main Street Acquisition Corp., 3715 Davinci Court, Suite 200, Norcross, GA 30092" did not comply with Rule 7004(b)(3) because no officer or individual was served); In re St. Louis, 2013 Bankr. LEXIS 3397 (Bankr. W.D. Tex. 2013) (holding that the debtors failed to comply with Rule 7004 when they served an objection to a claim as follows: "Home Loan Services, Inc. c/o Home Loan Services, Inc., PA9150-01-01, at 150 Allegheny Center, Pittsburgh, PA 15212" because no officer or individual was served); In re Smith, 2012 Bankr. LEXIS 6174, *13 (Bankr. E.D. Cal. 2012) (holding that a debtor who served a motion to extend the automatic stay failed to comply with Rule 7004(h) because the debtor served the motion upon "'Wells Fargo Home Mortgage/ACS' by First Class Mail, not addressed to the attention of an officer, and sent to a Post Office Box in Des Moines, Iowa."); In re Sunde, 2007 Bankr. LEXIS 3704, *5 (Bankr. W.D. Wis. 2007) (holding that service of an objection to claim to "Glen E. Johnson Construction, 634 Commerce Drive, Hudson, WI 54016-9178" did not satisfy Rule 7004(b)(3) – even though the movant used precisely the information listed in the proof of claim –

because the debtor failed to serve it upon an officer or agent); In re Sun Healthcare Group, Inc. v. Mead Johnson Nutritional (In re Sun Healthcare Group, Inc.), 2004 Bankr. LEXIS 572, *18 (Bankr. D.Del. 2004) (granting a motion to set aside default judgments because the debtor plaintiffs did not serve an officer of the defendant and only used a post office box and stating "the Debtors have admitted serving Mead only at P.O. Box 751735, Charlotte, NC 28275, without addressing the documents to the attention of any officer, managing or general agent of Mead. Mead asserts that this address is a lockbox to receive payments, which is maintained and administered by a bank . . . Failure to address the service of process to the attention of an officer or agent of Mead violates the statutory requirements of Bankruptcy Rule 7004(b)(3).").

In addition, service upon unnamed corporate officers does not comply with the applicable rules. Pursuant to F.R.B.P. 7004(b)(3) and 7004(h), a moving party must serve the appropriate named officer of the lienholder. Service that is not upon a named officer is not valid. In re Schoon, 153 B.R. 48 (Bankr. N.D. Cal. 1993) (denying a motion to avoid a lien under section 522(f) that was served upon "Attn: President"); In re Franchi, 451 B.R. 604 (Bankr. S.D. Fla. 2011) (denying a motion to avoid a lien because the debtor improperly served it upon "Any Officer Authorized to Accept Service" and holding that "service under Rule 7004(h) is not effected by serving an unnamed title or using language such as 'any other officer or agent entitled to receive service.' Service under Rule 7004(h) must be upon a named officer of the institution unless one of the three enumerated exceptions in that Rule apply."); Addison v. Gibson Equip. Co. (In re Pittman Mechanical Contractors), 180 B.R. 453 (Bankr. E.D. Va 1995) (following Schoon and granting a motion to set aside a default judgment because the summons and complaint were improperly served upon "Attn: President or Corporate Officer"); In re Golden Books Family Entertainment, 269 B.R. 300, 305 (Bankr. D.Del. 2001) (holding that service upon an unnamed "Asst. Controller" does not comply with F.R.B.P. 7004(b)(3) because the "notice documents were deficient because, among other things, they failed to address any of the copies of the notice to a person of authority or to a person authorized to accept service."); Saucier v. Capitol One (In re Saucier), 366 B.R. 780, 784 (Bankr. N.D. Ohio 2007) (citing Schoon and holding that a debtor who served a complaint upon "Capitol One" upon an "office manager" at a post office box failed to comply with the requirements of F.R.B.P. 7004(b)(3) because "it has been generally held that this type of generic heading is insufficient to effectuate proper service under the Rule."); see also Faulknor v. Amtrust Bank (In re Faulknor), 2005 Bankr. LEXIS 60, *5 (Bankr. N.D. Ga. 2005) (holding that service of a motion to redeem a car which was served to "Attn: President" did not satisfy F.R.B.P. 7004(h) because "service of the motion to redeem to the attention of an officer, without specifically naming the individual, fails to comply with Rule 7004 and the constitutional requirements of due process."); In re Roby, 2006 Bankr. LEXIS 4336 (Bankr. D.Md. 2006) (holding that a motion by the chapter 13 trustee to disallow a claim that was served by the trustee upon the "president" of the creditor did not satisfy Rule 7004(b)(3)).

For example in Schoon, the debtor filed a motion to avoid a lien pursuant to section 522(f) and served the creditor as follows: "HOMEOWNERS LUMBER CO, INC., Attn: President, 409 Petaluma Blvd South, Petaluma, CA 94952." The court held this service did not comply with F.R.B.P. 7004(b)(3) and stated as follows:

"The creditor did not file opposition to the motion within the time allowed, and the debtors now seek entry of an order avoiding the lien by default. The sole issue before the court is whether the motion was properly served. The court determines that the motion was not served properly, and accordingly will not enter the order.

"Rule 4003(d) of the Federal Rules of Bankruptcy Procedure provides that a motion by a debtor to avoid a lien under section 522(f) is a contested matter governed by Rule 9014. Rule 9014 requires that a contested matter be served in the same manner as a summons and complaint as set forth in Rule 7004. Rule 7004(b)(3) provides that if a summons and complaint are served by mail on a corporation, they must be mailed to the attention of an officer or agent of the corporation. The debtors take the position that their service is proper under the rule; the court disagrees.

"Nationwide service of process by first class mail is a rare privilege which can drastically reduce the costs and delay of litigation. As a privilege, it is not to be abused or taken lightly. Where the alternative to service by mail is hiring a process server to serve the papers in person, it seems like a small burden to require literal compliance with the rule. By addressing the envelope "Attn: President" the debtors did not serve an officer, they served an office. While service of an office is permitted to effect service on other types of entities (e.g. service on a municipality pursuant to Rule 7004(b)(6)), it is not a means of valid service on corporations under Rule 7004(b)(3).

and treat Citibank's claim as an unsecured claim, not a secured claim, but the Debtors never properly served Citibank with the proposed plan.

In addition, the Debtors did not satisfy the requirements for lien stripping in a chapter 13 case. Specifically, Citibank has a mortgage against the Debtors' residence and, as such, it has a secured claim in the case. Pursuant to section 1325(a)(2)(B) & (C) of the Bankruptcy Code, the Debtors had to treat that secured claim in one of two ways (payment in full or abandonment of the property). The chapter 13 plan of the Debtors did not satisfy these requirements.

Instead, the chapter 13 plan proposed to avoid the lien and pay Citibank as an unsecured creditor. In order to achieve this result in a chapter 13 case, the Debtors had to obtain an order at the beginning of the case that (1) valued the collateral of Citibank, (2) allowed the secured claim of Citibank as unsecured for the purposes of payments under the plan and (3) provided for avoidance of the mortgage at the end of the case (assuming the Debtors satisfied all requirements under the plan). In addition, if the Debtors obtained such an order at the beginning of the case, they were required to obtain an order at the end of the case avoiding the mortgage. The Debtors did not accomplish any of these steps.

At the beginning of the case in 2010, the Debtors filed the requisite motion but they abandoned that motion.[3] They did not prosecute the motion to completion. The Court indicated at a hearing on January 13, 2011 regarding the motion that the Court (the prior presiding judge)

---

"Allowing service in the manner argued here by the debtors makes a joke of the requirement that an officer be served; it takes no more work, just an additional line on the envelope. However, the Rule requires that an officer be served in order to insure that the corporation is put on notice that it is liable to lose valuable rights. Where the procedure outlined in a Rule is less formal than the procedure it replaces, it should be strictly construed. The court finds that the method of service employed by the debtors does not meet the requirements of Rule 7004(b)(3), and fails to meet minimum due process requirements.

"This ruling is hardly a disaster for movants or plaintiffs in bankruptcy litigation; it merely requires a little extra effort to determine the name of the president or other officer and make sure the envelope is addressed to him or her, by name. This is a small price to pay to avoid having to effect personal service."

Id. at 49.

[3] See Docket #44 & 48.

would grant the motion if the Debtors satisfied a condition but they never did so.[4]  In addition, the Debtors never obtained the required written order.[5]

In addition, three years later, at the end of the case in 2013, the Debtors had a duty to ask the Court at that time to enter an order avoiding Citibank's lien.  In a normal chapter 13 case involving lien stripping of a junior lien, the debtors file a request at the end of the case (after making all plan payments) stating that they have completed all their requirements under the plan and, therefore, are entitled to entry of an order avoiding the mortgage.  In this case, however, the Debtors took no action at all.  They filed no motion, no adversary proceeding or any request of any kind to avoid the mortgage.  They took none of the required action.  As a result, the Debtors received their discharge and the case was closed but the mortgage remained valid.

---

[4] In 2010, the Debtors filed the required motion and an amended motion (docket #44 & 48).  The judge originally assigned to this case (the Honorable Catherine Bauer) considered the amended motion at a hearing on January 13, 2011.  The undersigned judge has reviewed the audio file for the hearing and, at that hearing, Judge Bauer (ret.) had several concerns about service of the motion and a discussion occurred on the record.  Ultimately, Judge Bauer indicated orally that she would grant the motion on the condition that counsel for the moving party file a declaration addressing certain service issues.  Unfortunately, that condition was never satisfied.  Counsel agreed on the record to provide a declaration but never did so.  Counsel never filed the declaration requested by Judge Bauer.  Counsel for the Debtors has stated that "Judge Bauer granted the Motion" at that hearing. See Docket #88, page 2, paragraph 7.  However, counsel does not mention that the grant was conditional and the condition was not satisfied.

[5] The conditional oral ruling by Judge Bauer occurred on January 13, 2011.  With or without the condition, an oral ruling is not effective without a written court order.  Pursuant to the local rules, it was the duty of the moving party to submit a proposed written order to the Court.  Unfortunately, it appears that counsel either (1) never did so or (2) failed to follow-up.  On this issue, counsel for the Debtors has stated the following: "Given the passage of time, I cannot say with certainty whether I prepared and lodged an order or whether one was lodged but never signed and entered by the Court." See Docket #88, page 3, paragraph 11.  The undersigned judge has no knowledge on the subject because the case had not yet been assigned to him.

However, the Court does note that counsel agreed at the hearing on January 13, 2011 to provide Judge Bauer with a declaration regarding service and never did so.  Therefore, given that the declaration was never submitted, it seems likely that the order was also never submitted to the court.  Both were likely forgotten by counsel.

But either way, the Debtors did not act diligently.  If the Debtors failed to prepare a proposed order granting their motion and failed to submit it to the prior judge for consideration and execution, then they violated the local rules and did not sufficiently prosecute the motion to completion.  Likewise, even if they did submit the order and the Court lost it (or otherwise failed to act), the duty remained upon the Debtors to see the matter through to completion.  The duty remained on the Debtors to promptly bring the matter to the attention of the Court to ensure the proper order was entered promptly.  Counsel for the Debtors knew how to file such a motion because counsel eventually did so, nine years later. See Docket #88.  On June 12, 2019, counsel for the Debtors filed an application for entry of an order nunc pro tunc that would grant the 2010 motion.  But that was nine years after the filing of the motion.  That delay constitutes inexcusable neglect.

- 10 -

Time passed. Indeed, six years passed from 2013 to 2019. The case was closed in 2013 but the Debtors took no action until 2019 when they filed a motion to reopen the case. Then, the following year, the Debtors filed a motion to avoid the mortgage of Citibank in 2020. That motion is seven years late.[6]

As a result, the Court struggles to see how the Debtors can achieve the relief they now seek. Under the terms of their chapter 13 plan, the Debtors were required to obtain an order allowing Citibank to be paid as an unsecured creditor. Indeed, the entire point of their plan was to treat Citibank as an unsecured creditor, not a secured creditor.

For this very reason, the motion they filed in 2010 specifically asked for an order allowing Citibank an unsecured claim. The motion asked the Court to enter an order stating that Citibank's "claim on the junior position lien shall be allowed as a non-priority general unsecured claim in the amount per the filed Proof of Claim."[7] This was necessary relief in order to treat Citibank as an unsecured creditor in the case (as opposed to a secured creditor). However, the Debtors never obtained this order and, therefore, Citibank received no allowed unsecured claim and no distributions as an unsecured creditor. Meanwhile, all the other general unsecured creditors were paid 100% of their claims.[8]

As the Court understands it, the Debtors do not presently seek to pay Citibank the 100% that all other general unsecured creditors received. The Debtors do not seek to treat Citibank equally with the other general unsecured creditors. Instead, the Debtors now seek to void the lien of Citibank and pay it nothing on account of the resulting unsecured claim.

In contemplating this strategy, it should be self-evident that such relief would not be possible at the beginning of a case. In other words, if the Debtors had proposed at the outset to lien strip Citibank and pay nothing to Citibank as an unsecured creditor (while paying other

---

[6] In the Motion to Avoid Lien, the Debtors assert that they completed all their plan payments and now seek an order voiding the lien of Citibank. However, the Debtors filed the Motion to Avoid Lien in 2020. They should have filed it in 2013 when their plan completed. That was their duty and they failed to act. The Motion to Avoid Lien is seven years late.

[7] See Docket #44, page 3, paragraph 4(c).

[8] See Docket #79, page 2.

- 11 -

unsecured creditors 100%), such a plan would be unconfirmable on its face. Existing law does not permit such a plan. A fortiori, if the Debtors had asked for such relief at the end of the chapter 13 case in 2013, it would not have been permissible under the law. A fortiori, such relief seems unattainable at this time, eight years after the case concluded. Waiting for years does not make a request legally permissible that was impermissible during the case.[9]

---

[9] Certain comments in the Motion to Disallow Claim tend to indicate that the Debtors believe they can achieve this outcome by arguing that Citibank should have no claim because it filed a secured proof of claim after the claims bar date. If that is the position of the Debtors, the Court sees the following three problems.

First, no creditor needs to file a proof of claim in a chapter 13 case in order to retain a mortgage or lien. Liens ride through in bankruptcy. In re Mansaray-Ruffin, 530 F.3d 230, 235 (3rd Cir. 2008) ("At the outset, it must be noted that bankruptcy has traditionally afforded special status to liens, allowing them to pass through bankruptcy unaffected."); Cen-Pen Corporation, 58 F.3d 89, 92 (4th Cir. 1995) ("To begin with, appellants' argument ignores the general rule that liens pass through bankruptcy unaffected."). Therefore, Citibank need not have filed any proof of claim in the case to retain its lien.

And when Citibank did file its proof of claim, Citibank asserted that it was a secured creditor. It was the Debtors (not Citibank) that alleged that Citibank should be treated as an unsecured creditor but the Debtors never obtained the order to treat Citibank as an unsecured creditor. They filed the motion to do so but they abandoned that motion. But even if they had obtained an order finding that Citibank's secured claim should be treated as an unsecured claim, the Federal Rules of Bankruptcy Procedure give a creditor an extension of time to file an unsecured claim. See F.R.B.P. 3002(c)(3) (providing for an extension of time to file an unsecured claim if the Court "avoids the entity's interest in property").

Stated differently, Citibank's proof of claim demonstrates that it was content to be treated as a secured creditor in this case. In order for the Debtors to convert Citibank's secured claim to an unsecured claim, the Debtors had the burden of taking action (and completing that action). Unfortunately, they did not do so. And, if they had, the rules would have given Citibank an extension of time to file a proof of claim.

Second, even if the Citibank claim had been untimely and the Debtors successfully obtained an order disallowing the claim of Citibank as untimely filed, it would not invalidate the lien of Citibank. The decision in In re Kressler, 252 B.R. 632 (Bankr. E.D. Pa. 2000) illustrates the point nicely. In that case, the Court held that disallowance of an untimely secured claim does not impact the creditor's lien. Specifically, the court stated: "We first note that our February 2, 2000 Order disallowing Litton's claim does not address the substance of Litton's claim and does not call into question the validity of Litton's lien. Instead, this Order simply disallows Litton's claim solely because it was filed late. Hence, entry of our February 2, 2000 Order in no way impacts the validity of Litton's lien and places Litton in no worse a position than any other secured creditor who fails to file a proof of claim. Matter of Tarnow, 749 F.2d 464, 465–67 (7th Cir.1984); Bisch v. United States (In re Bisch), 159 B.R. 546, 548–50 (9th Cir. BAP 1993). Since the failure of a secured creditor to file a proof of claim will not result in the loss of the creditor's lien and generally speaking, after the bankruptcy case is concluded, the creditor may pursue the collateral to satisfy its lien, Estate of Lellock v. Prudential Ins. Co. of America, 811 F.2d 186, 187–88 (3rd Cir.1987); Tarnow, 749 F.2d at 465–67; Matter of Baldridge, 232 B.R. 394, 395–96 (Bankr.N.D.Ind.1999); Bisch, 159 B.R. at 548–50; see also 11 U.S.C. § 506(d)(2), such a secured creditor would be a 'party in interest' and would have standing to object to confirmation of a debtor's plan which purports to cramdown and avoid the secured creditor's lien." Id. at 633-34.

Third, the evidence filed by the Debtors tends to indicate that Citibank was not properly served with the notice of case commencement or the deadline to file claims. Specifically, the Debtors listed Citibank on Schedule D and the master mailing matrix with two addresses: "Citbank, P.O. Box 769006, San Antonio, TX 78245-9006" and "Citibank, P.O. Box 769013, San Antonio, TX 78245-9013." See Docket #1. The clerk of the Court then used these addresses in sending the notice of the case commencement with the notice of the claims bar date. See Docket #34 & 36.

1       To the contrary, even if the relief sought by the Debtors initially had legal merit, the

2 doctrine of laches and the passage of time would vitiate any such merit. Simply stated, whatever

3 rights the Debtors had, they slept on them. It just seems that too much time has passed and too

4 many missteps occurred in the case.

5       All of the reasons militate in favor of converting the matters to an adversary proceeding.

6

7 **IV.**    **AN ADVERSARY PROCEEDING IS ALSO NECESSARY TO ENSURE**

8        **CONSTITUTIONAL NOTICE.**

9       Finally, an adversary proceeding will provide the heightened degree of notice that is not

10 only just and fair but constitutionally required. The Due Process Clause of the United States

11 Constitution requires fair and sufficient notice to a party before deprivation of their property

12 rights such as extinguishing a lien. For example, the Third Circuit Court of Appeals concluded in

13 In re Mansaray-Ruffin, 530 F.3d 230 (3rd Cir. 2008) that a chapter 13 debtor must initiate an

14 adversary proceeding if she seeks to invalid a mortgage on her residence. The Court in

15 Mansaray-Ruffin held that such a result is constitutionally required and stated:

---

    However, these addresses do not match other documents provided by the Debtors. For example, when the Debtors filed their motion in 2010 (and the amended motion) at the beginning of the case to avoid the lien of Citibank and treat them as a general unsecured creditor (the motion they failed to prosecute to completion), they included billing statements from Citibank, N.A. for the junior mortgage. Those billing statement have two addresses that are different than the ones the Debtors used on schedules and the master mailing matrix. See Docket #44, page 9 of 12 and docket #48, page 9 of 12. In other words, the Debtors did not use any of the addresses from the billing statements when providing notice to Citibank, N.A. in this case.

    Similarly, the Debtors did not use the addresses on Schedule D or the master mailing matrix when serving Citibank with the motion and amended motion in 2010. Instead, the Debtors used different addresses (which, again, were not the addresses from the billing statements).

    Eventually, Citibank clearly did learn of the bankruptcy case because it filed a proof of claim. But the two addresses listed by Citibank on page one of its proof of claim do not match the addresses used by the Debtors on Schedule D or the master mailing matrix. Likewise, the loan agreement and the deed of trust attached to the proof of claim (which were both signed by the Debtors) include an address for the lender (One Sansome Street, San Francisco, CA  94104) but the Debtors did not use that address on Schedule D or the master mailing matrix.

    Similarly, when the Debtors filed the two motions that are the subject of this decision (the Motion to Avoid Lien and the Motion to Disallow Claim), they did not use the addresses from Schedule D or the master mailing matrix.

    Overall, the Court has been unable to find any evidence in the record that the addresses for Citibank used by the Debtors on Schedule D and the master mailing matrix were accurate or ever used again in this case with respect to any matter pertaining to the junior mortgage.

> Before it could be deprived of its property interest in its lien, [the creditor] had the constitutional right to a level of process that was "appropriate to the nature of the case." See Mullane, 339 U.S. at 313, 70 S.Ct. 652. As we emphasized above, our determination regarding the process due in any particular case depends on the context. A crucial piece of the context here is the existence of a binding Federal Rule of Bankruptcy Procedure directly on point that makes clear that a lien may only be invalidated through an adversary proceeding. Just as a procedural prescription in the statute guided us in determining the process due to the creditor in Harbor Tank Storage, 385 F.2d at 114–15, a procedural prescription in the Rules guides us here. In Harbor Tank Storage, we found that a creditor had the due process right "to assume that he w[ould] be sent all the notices to which he [wa]s entitled under the Act" before his claim could be barred. Id. at 115. Similarly, we now conclude that EMC had the due process right to assume that, unless Mansaray–Ruffin commenced the adversary proceeding required by the Rules and served it with a complaint and a summons, its lien could not be invalidated. Whatever actual knowledge EMC may have had regarding the plan's treatment of its lien did not eliminate this right and neither did the provisions of § 1327.

Id. at 242.

Similarly, the court in In re Forrest, 424 B.R. 831 (Bankr. N.D. Ill. 2009) aptly described the issues as follows:

> "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[D]ue process requires 'notice and the opportunity for hearing appropriate to the nature of the case' prior to deprivation of property rights." Hanson, 397 F.3d at 486–87 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "Due process does not always require formal, written notice of court proceedings." In re Pence, 905 F.2d 1107, 1109 (7th Cir.1990). But "'where the Bankruptcy Code and Bankruptcy Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect.'" Hanson, 397 F.3d at 486 (quoting In re Banks, 299 F.3d 296, 302 (4th Cir.2002)) (student loan debt not discharged when Chapter 13 debtor did *835 not file an adversary proceeding because creditor was entitled to heightened notice under 11 U.S.C. § 523(a)(8) and Fed. R. Bankr.P. 7001(6)). Contra, Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1203–05 (9th Cir.2008) (notice to a student loan creditor of the bankruptcy case itself satisfied due process because the creditor was on constructive or inquiry notice of the contents of the Chapter 13 plan).
>
> In this Circuit, therefore, where the Bankruptcy Code and Bankruptcy Rules require the debtor to prosecute an adversary proceeding, the debtor cannot instead proceed by a provision in the Chapter 13 Plan and expect it to bind the

creditor. See Hanson, 397 F.3d at 486.

. . .

Under the Bankruptcy Rules, the Bankruptcy Code, and the Constitution, Forrest may not strip off Litton Loan Servicing's wholly unsecured junior mortgage on her home through her Chapter 13 Plan. The Code forbids modification of the lien through a plan, the Bankruptcy Rules require an adversary proceeding for such relief, and Constitutional Due Process entitles Litton Loan Servicing to heightened notice through a complaint and service of summons in an adversary proceeding.

Id. at 834-36.

Likewise, the court in In re Smith, 514 B.R. 331, 338-39 (Bankr. S.D. Ga. 2014) (emphasis added) provided the following articulate thoughts about constitutional notice and the need for an adversary proceeding:

Therefore, based on precedent of the Supreme Court of Georgia, deeds to secure debt survive bankruptcy intact and are therefore presumptively "valid" absent a contrary determination authorized by the Bankruptcy Code. The avenue to contest "validity" is created in Rule 7001(2) and appears nowhere else. While § 506(d) declares certain liens "void," it does not dictate the procedural method required to obtain a judicial adjudication of that fact.

Only Rule 7001 provides that mechanism, and I hold that the procedural safeguards inherent in that rule should not be disregarded based on narrow definitions of "validity" adopted by many courts. <u>The Due Process Clause of the Fifth Amendment forbids the deprivation of a property right without due process of law and the adoption of a Rule of Procedure by the judiciary constitutes the template for assessing due process.</u>

I do not choose to narrowly parse the term "validity" in the face of Georgia law which makes these instruments presumptively valid. Because the deed to secure debt retains in rem viability under Georgia law, displacement of those rights must be viewed as a "validity" challenge. Rule 7001 is clear; it does not state that one type of validity challenge is covered by the Rule while others are not. Rather, any challenge to the viability of a lien must be considered within the confines of an adversary proceeding under the Rules and as a matter of due process. See In re Forrest, 424 B.R. 831, 833 (Bankr. N.D. Ill. 2009) ("Valuations may be appropriate for adequate protection, impairment, or similar purposes, but when the existence of the lien itself is at issue, then the "validity" and "extent" of the lien are certainly at issue, so an adversary proceeding is necessary."); see also In re Enriquez, 244 B.R. 156, 158 (Bankr. S.D. Cal. 2000) (requiring an adversary),

abrogated on other grounds by Zimmer, 313 F.3d 1220; In re Crestwood Co., 127 B.R. 213, 215 n.1 (Bankr. E.D. Ark. 1991) (same).

I recognize the end game to the litigation may be the same, but we live in a legal system which is constrained both by substantive law and procedural protections. One cannot ignore the latter in adjudicating this issue, even if the outcome is not changed, anymore than one can bypass the Fourth or Sixth Amendments in the name of efficiency.

And in fact, there is no way to know if the result would be the same. This Plan provision was unopposed by the creditor. Did it agree that Debtor was legally entitled to this outcome, or did it not pay sufficient attention to the Plan provisions? Perhaps it should have done so, but part of the purpose of Rule 7001 must certainly be to ensure that when the issue is the enforceability of a state created lien, the defendant is entitled to the most infallible degree of notice of the nature and serious consequences of the proceeding brought against it. The procedural safeguards of adversary proceedings, including the Rules of Pleading of Bankruptcy Rule 7008 which require a specific "demand for relief sought," are calculated to achieve this purpose.

Id., 514 B.R. at 338-39.

## V.   IF THE COURT IS NOT CAREFUL, BAD FACTS WILL MAKE BAD LAW.

The adage "bad facts make for bad law" certainly seems relevant in this case. The Court faces a quagmire. So many things have gone wrong in this bankruptcy case. Nevertheless, the Debtors did receive a discharge which is a significant benefit to them. But further relief seems more than a bit problematic given the considerable legal defects that have arisen over the last eleven years.

The situation would be different if the Debtors proposed at this time to reinstate their chapter 13 case and extend it long enough to pay Citibank 100% of its claim (as received by the other unsecured creditors). Treating Citibank as a general unsecured creditor would certainly seem fairer if Citibank received the same treatment that the other general unsecured creditors in this case actually received. And while the Debtors would still bear the heavy burden of overcoming the six-year delay and laches issues, at least the relief requested would, perhaps, seem theoretically possible in chapter 13.

However, the Debtors do not seek such relief. Instead, they want to void a second mortgage, pay the creditor nothing and still pay all other unsecured creditors 100%. Chapter 13 does not permit such a result.

In addition, the Debtors seek this relief at this time as a result of errors they made (not Citibank). The Debtors (1) failed to properly serve Citibank with the chapter 13 plan, (2) failed to diligently obtain an order at the beginning of the case to treat Citibank's secured debt as an unsecured claim and pay it as such during the chapter 13 case, (3) failed to take any action to avoid the lien of Citibank when the case concluded in 2013 and (4) allowed the case to close and waited six years before taking any further action. None of these actions were the fault of any of the creditors in this case. So, it would be highly unusual if the Debtors could achieve a result eleven years later that was unachievable during the case because of errors and omissions by the Debtors.

## VI. CONCLUSION.

Accordingly, for all these reasons, the relief sought by the Debtors at this late date appears unachievable. However, the Court makes no ruling on the substantive issues at this time. Instead, the Court simply converts the matter to an adversary proceeding. Procedural fairness and the Federal Rules of Bankruptcy Procedure require an adversary proceeding to provide clear notice to the adverse party.[10]

---

[10] Ironically, converting the matter to an adversary proceeding may very well be the best pathway to stimulating the parties to resolve the matter without judicial intervention. As sometimes occur, results in cases are not always driven purely by the law. Sometimes litigants simply give up and move on.

In this case, the Debtors claim that Citibank may agree to everything the Debtors desire. Counsel for the Debtors has said on the record that an unnamed person working for Citibank may concede to the Debtors' requests. It may be that the passage of time, as a practical matter, may have simply caused Citibank to close its file for this loan and write off the balance. If so, then the failure of the Debtors to comply with the law may not prevent them from achieving their goals.

If the parties have reached an agreement then no judicial action is necessary. Citibank can easily agree, if it so desires, to re-convey its mortgage and withdraw its proof of claim. The Court need not order anything (nor can it likely do so).

However, if the parties cannot resolve the matter, then an adversary proceeding is required.

- 17 -

The Court directs the Debtors to file the adversary complaint within thirty days and that complaint must be thorough.  It must clearly contain all the relief sought by the Debtors.

Specifically, the complaint needs to clearly assert that the Debtors seek the following relief: (1) avoid and extinguish the mortgage of Citibank, (2) disallow the secured proof of claim of Citibank, (3) not allow any unsecured claim in favor of Citibank, (4) not make any distributions to Citibank on account of an unsecured claim and (5) discharge all obligations owed to Citibank.  The complaint needs to assert this relief clearly and starkly along with all the other normal provisions in a complaint including jurisdiction allegations, party information and a full recitation of relevant factual allegations.  In order to provide sufficient notice, the complaint should have (among other things) a caption on the first page with a document title as follows (or comparable language): "Complaint To Avoid Lien of Citibank, N.A., Disallow All Claims, Pay Creditor Nothing And Discharge All Obligations to Citibank, N.A."  The Debtors shall attach a copy of this memorandum of decision and the accompanying order as Exhibits 1 and 2 to the complaint.  They should attach as Exhibit 3 a recorded copy of the instrument that the Debtors seek to avoid and attach as Exhibit 4 the proof of claim to which they object.  The Debtors should attach other appropriate exhibits to the complaint.

Again, in making this ruling, the Court is not suggesting that the Debtors can achieve their goals by adversary procedure (or any other procedure).  To the contrary, as stated above, the Court has considerable doubts.  However, if any path exists to the relief sought, an adversary proceeding is required to get there.  Only an adversary proceeding will provide sufficient notice of the unusual relief sought by the Debtors at this very late stage.

IT IS SO ORDERED.

Date: February 10, 2021

_____
Wayne Johnson
United States Bankruptcy Judge