1  ANDREW S. BISOM (SBN 137071)
   THE BISOM LAW GROUP
2  300 Spectrum Center Drive, Ste. 1575
   Irvine, CA 92618
3  Telephone: (714) 643-8900
   Facsimile: (714) 643-8901
4  abisom@bisomlaw.com

5  Attorneys for Plaintiffs
   Lawrence and Vicki Forester

6

7

8               UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    RIVERSIDE DIVISION

| 11 | **In re:** | Case No. 6:10-bk-16163-WJ |
|---|---|---|
| 12 | **LAWRENCE EUGENE FORESTER,** | Chapter 13 |
| 13 | **VICKI LOVELL FORESTER,** | Adv. No. |
| 14 | **Debtors** | **COMPLAINT TO AVOID LIEN OF** |
| 15 | | **CITIBANK, N.A. ON PRINCIPAL** |
| | | **RESIDENCE [11 U.S.C.§506(d)],** |
| 16 | | **DISALLOW ALL CLAIMS, PAY** |
| | | **CREDITOR NOTHING AND** |
| 17 | **LAWRENCE EUGENE FORESTER,** | **DISCHARGE ALL OBLIGATION TO** |
| | **VICKI LOVELL FORESTER,** | **CITIBANK, N.A.** |
| 18 | | |
| 19 | **Plaintiffs,** | |
| | **v.** | |
| 20 | **CITIBANK, N.A.** | |
| 21 | **Defendant.** | |
| 22 | | |

23        Plaintiffs Lawrence and Vicki Forester ("Plaintiffs") make the following representations:

24                    **PRELIMINARY ALLEGATIONS**

25    1.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J).

26    2.  This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334.

27

28

3.    Venue is proper in this district by virtue of 28 U.S.C. §1409 because Plaintiff's Bankruptcy case was filed in this Court on March 4, 2010 ("Petition Date").

4.    Plaintiffs Lawrence and Vicki Forester are individuals and debtors in the above-referenced bankruptcy case.

5.    Plaintiffs are informed and believe and based thereon allege that Defendant Citibank, N.A. ("Citibank" or "Defendant") is a corporation, in good standing with its principal place of business in New York, NY.

## GENERAL ALLEGATIONS

6.    On March 10, 2010, Plaintiffs filed a voluntary petition for relief pursuant to chapter 7 of title 11 of the United States Code. The case was converted to chapter 13 by order entered on September 23, 2010. Plaintiffs' Plan was confirmed on January 13, 2011. The Plan provided for payment of 27% of allowed claims for general unsecured creditors. Section V, Part F, Miscellaneous provisions states "Debtors to file motion to value and void Citibank lien on their residence. The Plan was served upon Citibank.

7.    The deadline for creditors to timely file proofs of claim pursuant to the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines was February 2, 2011.

8.    On November 4, 2010, Plaintiffs filed their Motion to Avoid Junior Lien on Principal Residence [11 U.S.C. §506(d)]. The motion sought to avoid the junior lien in favor of Citibank on Plaintiffs' principal residence located at 4525 Center Ave., Norco, CA 92860 ("Subject Property").

9.    The Court determined that Citibank was not served in accordance with FRBP 7004(h) and continued the hearing to January 13, 2011 to allow for proper service.

10.    On December 18, 2010, Debtors' counsel served the Motion and the Notice of Continued Hearing by certified mail to both lienholders to the attention of their then CEOs:

2

      a.    PNC BANK
              James E. Rohr, Chairman & CEO
              One PNC Plaza
              249 Fifth Avenue
              Pittsburgh, PA 15222
              Tracking No. 7010 1670 0001 8844 2902

      b.    Citibank
              Vikram Pandit, CEO, Director
              399 Park Avenue, Second Floor
              New York, NY 10022
              Tracking No. 7010 1670 001 8844 2919

11.    Plaintiffs' counsel received signed return receipts from both lenders.

12.    In order to ascertain the identity of Citibank's corporate officers Debtors, through their counsel initially searched Citibank's website but was not able to locate any information about its officers. Counsel than researched the FDIC's website but was not able to find information on Citibank's corporate officers. The California Secretary of State's website was of limited assistance. Through Wikipedia Counsel discovered that Vikram Pandit was Chief Executive Officer for Citigroup, Inc. and obtained his address. The information was verified by conducting a Google search of Mr. Pandit which confirmed that he was CEO for Citigroup. Mr. Pandit was served as set forth above.

13.    Upon reading the Court's tentative ruling questioning whether Citibank had been properly served Counsel reviewed his efforts. He verified that Citibank N.A. and Citigroup, Inc. were the same entity by reviewing a library database called the Business & Company Resource Center ("Resource Center"). By way of the following Counsel was able to confirm that Citibank is not a separate entity but a division within Citigroup:

      a.    Citigroup and Citibank shared the same address, and toll-free telephone number and Citibank was a wholly owned subsidiary of Citigroup;

      b.    Citigroup was described as being made up of three segments, including its

consumer banking business;

        c.      Citibank did not have a publicly traded stock;

        d.      Gitigroup's Form 10-Q filed with the Securities and Exchange Commission included Citibank's balance sheet and financial information;

        e.      A search of the California Secretary of State's website did not provide information for Citibank N.A.

14.      The Motion was unopposed.

15.      The Court's Minute Order reflects that the Motion was granted but either an order was not lodged or lodged but not entered by the Court.

16.      On May 9, 2011 the Chapter 13 Trustee filed its Notice of Intent To Increase Dividend To Unsecured Creditors. The Notice did not require Debtors to increase their base payments but merely stated that "based upon the claims filed in the within case… it appears that the unsecured creditors in this case are entitled to a higher dividend than provided in the confirmed plan." The Notice was filed after the deadline for creditors to timely file proofs of claim but prior to Citibank filing its proof of claim.

17.      On September 30, 2011, Citibank filed its proof of claim asserting a secured claim in the amount of $110,130.20 and arrears of $4,636.98. The proof of claim was filed 8 months after the claims bar date.

18.      On July 30, 2013, the Chapter 13 Trustee filed his Final Report and Account. The Report shows payments to CitiMortgage in the amount of $4,636.98.

19.      Debtors completed their Chapter 13 Plan. The discharge order was entered on September 10, 2013. Debtors' bankruptcy case was closed on October 24, 2013.

20.      Debtors recently discovered that Citibank's lien remains on the property. A review of the Court's docket includes the Minute Order showing that the Court granted

COMPLAINT

Plaintiffs' Motion but does not include a signed order entered by the Court.

21.    Given the passage of time, it cannot be said with certainty whether an order was prepared and lodged or whether one was lodged but never signed and entered by the Court.

## FIRST CLAIM FOR RELIEF

### Avoid Junior Lien On Principal Residence [11 U.S.C. §506(d)]

22.    Plaintiff repeats the allegations of paragraphs 1-21 with the same effect as if set forth herein.

23.    As of September 23, 2010, Debtors' residence was subject to the following liens in the amounts specified securing the debt against the Property that the Debtors seek to have treated as indicated:

1) Name of holder of 1st Lien: PNC Bank in the amount of $235,588;

2) Name of holder of 2nd lien: Citibank N.A. in the amount of $110,130.

24.    The Subject Property is a single-family home consisting of 2 bedrooms and 2 baths and 1,047 square feet. Debtors are informed and believe that the property's value at the time this case was commenced to be $224,000.

25.    At the time Debtors' bankruptcy case was filed Citibank's lien exceeded the fair market value of the Subject Property.

26.    The claim of the senior lien holder exceeded the Subject Property's fair market value, making Citibank's claim unsecured pursuant to 11 U.S.C. §506(a)(1).

## SECOND CLAIM FOR RELIEF

### Objection to Claim No. 10 Filed By Citibank N.A.

27.    Plaintiff repeats the allegations of paragraphs 1-26 with the same effect as if set forth herein.

28.    On September 30, 2011, Citibank filed Proof of Claim No. 10 in the amount of

$110,130.20 secured by Debtors' residence located at 4525 Center Ave., Norco, CA 92860.

29.    Almost a year to the day prior to the filling of Citibank's Proof of Claim, the Bankruptcy Court served the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines on all creditors ("Notice"). The Notice advised creditors that February 2, 2011 was the deadline to file a proof of claim.

30.    Citibank failed to file its proof of claim until September 30, 2011, almost eight months after the deadline for creditors to file claims had passed.

31.    Debtors object to Claim Number 10 filed by Citibank N.A. as being untimely.

## **THIRD CLAIM FOR RELIEF**

### **Disallowance of Citibank's Participation in Debtors' Plan [Fed.R.Bankr.P. 3002(a)]**

32.    Plaintiff repeats the allegations of paragraphs 1-31 with the same effect as if set forth herein.

33.    Citibank failed to file its proof of claim until September 30, 2011,  just short of eight months after the Court issued deadline for creditors to file claims and more than four months after the Trustee issued its Notice Of Intent To Increase Dividend, which was based upon the claims filed up to that point.

34.    The Federal Rules of Bankruptcy Procedure provides that in a Chapter 13 case "[a]n unsecured creditor or an equity security holder *must* file a proof of claim or interest to be allowed." *Fed. R. Bankr. P. 3002(a)*

35.    The deadline to file a proof of claim in a Chapter 13 case is rigid, and the bankruptcy court lacks equitable power to extend the deadline after the fact.

36.    Debtors' Plan proposed to pay 27% of allowed general unsecured claims. Several months after the deadline for filing proofs of claim had passed the Trustee file his Notice of

Intent To Increase Dividend and general unsecured creditors ended up being paid in full. An additional four months passed before Citibank filed its proof of claim. The notice to increase the Plan's dividend would not have been filed if Citibank's Proof of Claim had been timely filed and the Plan's dividend would not have been increased to pay 100% of allowed unsecured claims.

37.    Citibank was paid $4,636.98 pursuant to its untimely proof of claim that it should not have received.

38.    By virtue of Citibank's failure to file a *timely* proof of claim, it was not entitled to receive any distribution on its unsecured claim.

WHEREFORE, Plaintiffs pray for entry of judgment against Defendant as follows:

1.  For a determination that the Subject Property's fair market value to be $225,000 as of March 2010;

2.  Find that Citibank's lien is unsecured;

3.  Avoid and extinguish Citibank's mortgage lien;

4.  Uphold Debtors' objection to Citibank's Proof of Claim;

5.  For a determination that Citibank's Proof of Claim was filed untimely;

6.  Find that Citibank does not hold an unsecured claim;

7.  Hold that by virtue of Citibank's failure to file a timely proof of claim, it was not entitled to receive any distribution on its unsecured claim;

8.  Discharge all of Plaintiffs' obligations to Citibank;

9.  Costs of suit;

10. For any and all other relief the Court deems appropriate.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BISOM LAW GROUP

Dated:  March 10, 2021

Andrew S. Bisom, Attorney for Plaintiffs

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

COMPLAINT

1

2

3

4

5

6

7

FILED & ENTERED

FEB 10 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch      DEPUTY CLERK

8          UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  RIVERSIDE DIVISION

11

12   In re:                                    Case No.: 6:10-bk-16163-WJ

13   LAWRENCE EUGENE FORESTER and              CHAPTER 13
     VICKI LOVELL FORESTER,
14
                  Debtors.                     **MEMORANDUM OF DECISION**
15                                             **CONVERTING PENDING MATTERS TO**
                                               **AN ADVERSARY PROCEEDING**
16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION.

Currently pending before the Court are two motions by the debtors, Lawrence and Vicki Forester ("Debtors"): (a) a motion to void the mortgage of Citibank, N.A. [docket #105] ("Motion to Avoid Lien") and (b) an objection to the proof of claim of Citibank, N.A. [docket #110] ("Motion to Disallow Claim"). For the following reasons, the Court hereby converts both matters to an adversary proceeding. The Debtors should file an adversary complaint within thirty days.

## II.    THE FEDERAL RULES OF BANKRUPTCY PROCEDURE REQUIRE AN ADVERSARY PROCEEDING.

The Debtors filed this chapter 13 bankruptcy case almost eleven years ago. Much time has passed and, after many years of delay, the Debtors seek certain relief. In summary, Citibank, N.A. has a junior mortgage against the residence of the Debtors and the Debtors seek to accomplish the following: (a) void that mortgage, (b) pay Citibank nothing, (c) disallow the secured proof of claim of Citibank, (d) not allow or pay through the chapter 13 plan any unsecured claim of Citibank and (e) discharge the debt of Citibank. Without suggesting any of these goals are achievable eleven years later with any procedure (the Court has considerable doubts), it is clear that procedural fairness to Citibank requires, at a minimum, that the Debtors commence an adversary proceeding if they continue to seek such relief.

Specifically, Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (as it existed in 2010 when this case was filed[1]) states that an adversary proceeding is required to "determine, the

---

[1] This bankruptcy case was filed in 2010 and, therefore, is governed by the Federal Rules of Bankruptcy Procedure in effect in 2010. Under those rules, bankruptcy courts had divergent views regarding whether a junior mortgage could be avoided without an adversary proceeding. Some courts permitted avoidance of liens by motion and others required an adversary proceeding. For the reasons set forth in the extensive case authority cited in the next several pages, this Court concludes an adversary proceeding is necessary to avoid a lien.

The Court does note that, about seven years after the filing of this bankruptcy case, Rule 7001(2) was amended as of December 1, 2017 and now may permit avoiding of liens by motion. However, that amendment does not automatically apply retroactively. The order of the United States Supreme Court approving the 2017 amendments states that the new amendments "shall govern in all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Based on this language, the revised rules cannot apply in this case for two reasons.

First, when the rules were revised in 2017, this case was not "then pending." The Debtors filed this case in 2010 and completed their plan in 2013 and the case was closed in 2013. It remained closed for six years until the Debtors filed a motion to reopen the case in 2019. Thus, in 2017, the case was not "then pending". The case was

1  validity, priority, or extent of a lien or other interest in property . . . ."  Through the Motion to

2  Avoid Lien, the Debtors seek an order finding that the Citibank mortgage is not valid, has no

3  priority and does not constitute a lien against the residence of the Debtors.  Hence, an adversary

4  proceeding is necessary under the plain language of Rule 7001(2).  See Cen-Pen Corp. v. Hanson,

5  58 F.3d 89, 93 (4th Cir. 1995) ("Initiation of an adversary proceeding is a prerequisite to

6  challenging 'the validity or existence' of a lien against property of the estate in a Chapter 13

7  proceeding, id., and no such proceeding was initiated here."); In re Mansaray-Ruffin, 530 F.3d

8  230, 234-37 (3rd Cir. 2008) ("Federal Rule of Bankruptcy Procedure 7001 sets forth matters that

9  may only be resolved through an 'adversary proceeding,' including the determination of the

10  'validity, priority, or extent of a lien or other interest in property.' Fed. R. Bankr.P. 7001(2).  An

11  adversary proceeding is essentially a self-contained trial—still within the original bankruptcy

12  case—in which a panoply of additional procedures apply. See Fed. R. Bankr.P. 7001–7087.

13  Many of these procedures derive in whole or in part from the Federal Rules of Civil Procedure,

14  giving an adversary proceeding all the trappings of traditional civil litigation.  For example,

15  Federal Rule of Bankruptcy Procedure 7003 adopts wholesale Federal Rule of Civil Procedure 3

16  and thus requires the filing of a complaint to commence an adversary proceeding.  Adopting and

17  modifying portions of Federal Rule of Civil Procedure 4, Federal Rule of Bankruptcy Procedure

18  7004 requires the service of a summons and a copy of the complaint.  Federal Rule of Bankruptcy

19  Procedure 7012 provides that the defendant has 30 days to file an answer after the issuance of the

20  summons and makes Federal Rule of Civil Procedure 12(b)-(h) applicable in its entirety, thus

21  allowing, inter alia, all of the 12(b) defenses, motions for a more definite statement, and

22  judgments on the pleadings.  Moreover, an adversary proceeding offers the parties the same

---

closed in 2017.

     Second, given all the procedural missteps by the Debtors in the case discussed in this decision (i.e. the failure to properly serve the chapter 13 plan, the failure to diligently obtain an order at the beginning of the case, the failure to obtain an order at the end of the chapter 13 plan process in 2013 and the six year delay in bringing the Motion to Avoid Lien it would not be "just and practicable" to utilize the amended rules in this case.

     Had the Debtors acted diligently during the years the case was pending (2010 to 2013), the amendments to the rules in 2017 would not be available to the Debtors because, of course, they did not exist during the period from 2010 to 2013. So, it would not be "just" or "practicable" to allow the use of rules that would not have even existed had the Debtors acted timely.

- 3 -

1   opportunity for discovery as traditional civil litigation, and the rules regarding voluntary and

2   involuntary dismissals, default judgments, and summary judgment are identical as well. See Fed.

3   R. Bankr.P. 7026–7037, 7041, 7055–7056 (making Fed.R.Civ.P. 26–37, 41, and 55–56 applicable

4   to adversary proceedings). The Rules are binding and courts must abide by them . . . . It is

5   appropriate that the Rules permit lien invalidation to occur only through litigation in an adversary

6   proceeding—and not through a provision in a plan—for the invalidation of a lien on the property

7   of the debtor held by a specific creditor is a matter of particularly great consequence, in terms of

8   the applicable legal principles and the practical result. As discussed above, an adversary

9   proceeding provides the lienholder with 'greater procedural protection,' Tenn. Student Assistance

10   Corp. v. Hood, 541 U.S. 440, 451, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004), requiring a complaint

11   and a summons, providing for an answer and discovery, and generally concluding only after trial

12   or a dispositive motion."); In re Ginther, 427 B.R. 450, 456 (Bankr. N.D. Ill. 2010) ("There is

13   some disagreement among courts over whether a debtor seeking to strip-off a completely

14   underwater junior mortgage must do so through an adversary proceeding, or if it can be

15   accomplished through a motion or simply through a plan . . . . However, this Court agrees that

16   the Bankruptcy Rules require an adversary proceeding. Fed. R. Bankr. P. 7001(2) defines a

17   proceeding 'to determine the validity, priority, or extent of a lien or other interest in property' as

18   an adversary proceeding."); Wright v. Commercial Credit Corp., 178 B.R. 703, 705-06 (E.D. Va.

19   1995) ("When a party asks the bankruptcy court to determine the extent of a lien or the value of

20   the collateral forming the basis of the lien, adversary proceedings are required, as contemplated

21   by Bankruptcy Rule 7001(2) and Bankruptcy Rule 3012. . . . . Accordingly, the Court affirms the

22   Bankruptcy Judge's finding that an adversary proceeding is necessary before appellee

23   Commercial Credit Corporation's status as a secured or unsecured creditor is determined based on

24   the valuation of the property underlying appellee's lien."); In re Forrest, 424 B.R. 831, 836

25   (Bankr. N.D. Ill. 2009) ("Under the Bankruptcy Rules, the Bankruptcy Code, and the

26   Constitution, Forrest may not strip off Litton Loan Servicing's wholly unsecured junior mortgage

27   on her home through her Chapter 13 Plan. The Code forbids modification of the lien through a

28   plan, the Bankruptcy Rules require an adversary proceeding for such relief, and Constitutional

1    Due Process entitles Litton Loan Servicing to heightened notice through a complaint and service

2    of summons in an adversary proceeding."); In re Smith, 514 B.R. 331, 338-39 (Bankr. S.D. Ga.

3    2014) ("I hold that the procedural safeguards inherent in that rule should not be disregarded based

4    on narrow definitions of 'validity' adopted by many courts.  The Due Process Clause of the Fifth

5    Amendment forbids the deprivation of a property right without due process of law, and the

6    adoption of a Rule of Procedure by the judiciary constitutes the template for assessing due process

7    . . . . [A]ny challenge to the viability of a lien must be considered within the confines of an

8    adversary proceeding under the Rules and as a matter of due process. . . . [P]art of the purpose of

9    Rule 7001 must certainly be to ensure that when the issue is the enforceability of a state created

10   lien, the defendant is entitled to the most infallible degree of notice of the nature and serious

11   consequences of the proceeding brought against it.  The procedural safeguards of adversary

12   proceedings, including the Rules of Pleading of Bankruptcy Rule 7008 which require a specific

13   'demand for relief sought,' are calculated to achieve this purpose."); In re Enriquez, 244 B.R. 156,

14   158 (Bankr. S.D. Cal. 2000) (holding that if a chapter 13 debtor seeks to extinguish a junior

15   mortgage "an adversary proceeding must be brought."  Lien-stripping in chapter 13 "cannot be

16   obtained without commencement of an adversary proceeding."). In re Gates, 214 B.R. 467, 470

17   (Bankr. D. Md. 1997) (noting that a "contest between debtor and creditor regarding the value of a

18   given secured claim should not be heard in the context of confirmation, but rather in a separate

19   adversary proceeding as governed by Federal Rules of Bankruptcy Procedure 3012 and 7001.");

20   In re Kressler, 252 B.R. 632, 635 (Bankr. E.D. Pa. 2000) ("Our holding today that a debtor may

21   not cramdown and avoid a secured creditor's lien through the plan confirmation process without

22   first taking an 'affirmative step' such as filing an adversary complaint to avoid the lien or filing an

23   objection to the secured creditor's proof of claim, which, if the objection seeks a determination of

24   the validity, priority or extent of the creditor's lien, will become an adversary proceeding, see

25   Fed.R.Bankr.P. 3007, has support in the caselaw, see Cen–Pen Corp. v. Hanson, 58 F.3d 89, 92–

26   94 (4th Cir.1995); Sun Finance Co., Inc. v. Howard (Matter of Howard), 972 F.2d 639, 641–42

27   (5th Cir.1992); Foremost Fin'l. Serv. Corp. v. White (In re White), 908 F.2d 691 (11th Cir.1990);

28   Simmons v. Savell (In re Simmons), 765 F.2d 547, 552–59 (5th Cir.1985); In re McKay, 732 F.2d

1    44, 45–48 (3rd Cir.1984); Wright v. Commercial Credit Corp., 178 B.R. 703, 705 (E.D.Va.1995);

2    Bisch, 159 B.R. at 548–50; Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy),

3    130 B.R. 318, 320–21 (9th Cir. BAP 1991); Spadel v. Household Consumer Discount Co. (In re

4    Spadel), 28 B.R. 537, 539–40 (Bankr.E.D.Pa.1983), see also In re Siciliano, 167 B.R. 999, 1017

5    (Bankr.E.D.Pa.1994); Owens v. Fleet Mortgage (In re Owens), 132 B.R. 293, 296–97

6    (Bankr.E.D.Pa.1991), and is derived from both a literal reading of the Bankruptcy Rules and a

7    concern for protecting the due process rights of the secured creditor.  While we recognize that

8    some courts have permitted debtors to cramdown and avoid a secured creditor's lien solely

9    through the plan confirmation process . . . we disagree with this approach and decline to follow

10   it."); In re Pierce, 282 B.R. 26, 28 (Bankr. D.Utah 2002) (holding that a chapter 13 debtor who

11   wishes to lien strip a junior mortgage must file an adversary proceeding and stating: "The Debtors

12   have properly brought this issue before the court in the posture of an adversary proceeding.

13   While a few courts have entertained this issue via motion in a contested matter or through an

14   objection to claim, the Court follows the plain language of Federal Rule of Bankruptcy Procedure

15   7001(2) which states: '[A] proceeding to determine the validity, priority, or extent of a lien or

16   other interest in property' is an adversary proceeding, which is supported by the majority of

17   courts which have looked at the issue."); See also, Sun Finance Co., Inc. v. Howard (In re

18   Howard), 972 F.2d 639 (5th Cir.1992); In re Vankell, 311 B.R. 205 (Bankr. E.D. Tenn. 2004).

19        In addition, Rule 3007(b) of the Federal Rules of Bankruptcy Procedure provides that

20   when a party seeks to both object to a proof of claim and seeks other relief set forth in Rule 7001

21   (such as avoiding a lien), both forms of relief should be brought in an adversary proceeding. See,

22   e.g., In re Kressler, 252 B.R. 632, 634 (Bankr. E.D. Pa. 2000) ("Instead, the Rules require that a

23   proceeding to determine the extent, validity or priority of a lien be instituted by complaint.

24   Fed.R.Bankr.P. 7001(2).  If an objection to claim is filed which includes a request for a

25   determination of the extent, validity or priority of a lien, the Rules provide that the objection to

26   claim proceeding becomes an adversary proceeding. Fed.R.Bankr.P. 3007."); In re Gates,

27   214 B.R. 467, 470 (Bankr. D. Md. 1997) (denying a motion to alter a court order overruling the

28   objection by a chapter 13 debtor to a secured claim and noting that a "contest between debtor and

1    creditor regarding the value of a given secured claim should not be heard in the context of

2    confirmation, but rather in a separate adversary proceeding as governed by Federal Rules of

3    Bankruptcy Procedure 3012 and 7001.").

4

5    **III.    PROCEDURAL FAIRNESS REQUIRES AN ADVERSARY PROCEEDING.**

6          In addition to the requirements of the Federal Rules of Bankruptcy Procedure, procedural

7    fairness requires an adversary proceeding for several additional reasons. First, Citibank was not

8    properly served with the chapter 13 plan. Second, the Debtors did not satisfy the requirements for

9    a chapter 13 case that seeks to avoid a junior mortgage.

10          With respect to the former, the Debtors failed to properly serve Citibank with the

11    chapter 13 plan in this case.[2] The chapter 13 plan proposed to extinguish Citibank's mortgage

---

12          [2] Confirmation of a chapter 13 plan is a contested matter. Creditors may object to the plan and, indeed, the

13    chapter 13 plan filed by the Debtors in this case specifically stated that "creditors may object to this Plan being
confirmed pursuant to 11 U.S.C. § 1324. Any objection must be in writing and must be filed with the court and

14    served upon the Debtor . . . ." See Docket #38, page 1.

          Pursuant to Rule 9014(b), contested matters require service that complies with Rule 7004 but that did not

15    occur in this case. The Debtors never served an officer of Citibank with the chapter 13 plan.

          Pursuant to F.R.B.P. 7004(b)(3) and 7004(h), a moving party must serve the appropriate named officer of

16    the lienholder. Service that is not upon an officer is void. Beneficial Cal., Inc. v. Villar (In re Villar), 317 B.R. 88, 93
(9th Cir. BAP 2004) (reversing an order granting lien avoidance under section 522(f) and holding that service of a

17    522(f) motion upon "Beneficial, P.O. Box 60101, City of Industry, CA 91716-0101" did not comply with
Rule 7004(b)(3) and stating that "service was insufficient under the plain words of Rule 7004(b)(3). In order to

18    assure that the party being served is apprised of the pendency of an action, valid service requires more than to address
the document to a post office box."); Jacobo v. BAC Home Loans Servicing LP, 477 B.R. 533 (D.N.J. 2012) (holding

19    that a confirmed chapter 13 plan which sought to cramdown a mortgage on real property was not binding upon the
secured creditor because the debtor failed to serve an officer as required by Rule 7004(h) and, instead, only served the

20    creditor as follows: "BAC Home Loans/Countrywide 450 American Street, #SV416 Simi Valley, CA 93065, and
Bank of America, 4161 Piedmont Pkwy NC4-105-01-34, Greensboro, NC 27410-8119."); York v. Bank of America,

21    N.A. (In re York), 291 B.R. 806, 811 (Bankr. E.D. Tenn. 2003) (holding that "the original summons was not
addressed to an officer by either name or title. As a result, it was not proper service under Rule 7004(b)(3)."); Braden

22    v. General Motors Acceptance Corp., 142 B.R. 317 (Bankr. E.D. Ark. 1992) (holding that service of a complaint by a
debtor upon "the defendant General Motors Acceptance Corporation . . . at 'P.O. Box 988, Blytheville, AR 72315'"

23    failed to comply with Rule 7004(b)(3)); see also In re Bolden, 2014 Bankr. LEXIS 699 (Bankr. M.D.Fla. 2014)
(holding that service of a 522(f) motion upon "Main Street Acquisition Corp., 3715 Davinci Court, Suite 200,

24    Norcross, GA 30092" did not comply with Rule 7004(b)(3) because no officer or individual was served); In re St.
Louis, 2013 Bankr. LEXIS 3397 (Bankr. W.D. Tex. 2013) (holding that the debtors failed to comply with Rule 7004

25    when they served an objection to a claim as follows: "Home Loan Services, Inc. c/o Home Loan Services, Inc.,
PA9150-01-01, at 150 Allegheny Center, Pittsburgh, PA 15212" because no officer or individual was served); In re

26    Smith, 2012 Bankr. LEXIS 6174, *13 (Bankr. E.D. Cal. 2012) (holding that a debtor who served a motion to extend
the automatic stay failed to comply with Rule 7004(h) because the debtor served the motion upon "'Wells Fargo

27    Home Mortgage/ACS' by First Class Mail, not addressed to the attention of an officer, and sent to a Post Office Box
in Des Moines, Iowa."); In re Sunde, 2007 Bankr. LEXIS 3704, *5 (Bankr. W.D. Wis. 2007) (holding that service of

28    an objection to claim to "Glen E. Johnson Construction, 634 Commerce Drive, Hudson, WI 54016-9178" did not
satisfy Rule 7004(b)(3) – even though the movant used precisely the information listed in the proof of claim –

because the debtor failed to serve it upon an officer or agent); <u>In re Sun Healthcare Group, Inc. v. Mead Johnson Nutritional (In re Sun Healthcare Group, Inc.)</u>, 2004 Bankr. LEXIS 572, *18 (Bankr. D.Del. 2004) (granting a motion to set aside default judgments because the debtor plaintiffs did not serve an officer of the defendant and only used a post office box and stating "the Debtors have admitted serving Mead only at P.O. Box 751735, Charlotte, NC 28275, without addressing the documents to the attention of any officer, managing or general agent of Mead. Mead asserts that this address is a lockbox to receive payments, which is maintained and administered by a bank . . . Failure to address the service of process to the attention of an officer or agent of Mead violates the statutory requirements of Bankruptcy Rule 7004(b)(3).").

In addition, service upon unnamed corporate officers does not comply with the applicable rules.  Pursuant to F.R.B.P. 7004(b)(3) and 7004(h), a moving party must serve the appropriate named officer of the lienholder.  Service that is not upon a named officer is not valid. <u>In re Schoon</u>, 153 B.R. 48 (Bankr. N.D. Cal. 1993) (denying a motion to avoid a lien under section 522(f) that was served upon "Attn: President"); <u>In re Franchi</u>, 451 B.R. 604 (Bankr. S.D. Fla. 2011) (denying a motion to avoid a lien because the debtor improperly served it upon "Any Officer Authorized to Accept Service" and holding that "service under Rule 7004(h) is not effected by serving an unnamed title or using language such as 'any other officer or agent entitled to receive service.'  Service under Rule 7004(h) must be upon a named officer of the institution unless one of the three enumerated exceptions in that Rule apply."); <u>Addison v. Gibson Equip. Co. (In re Pittman Mechanical Contractors)</u>, 180 B.R. 453 (Bankr. E.D. Va 1995) (following <u>Schoon</u> and granting a motion to set aside a default judgment because the summons and complaint were improperly served upon "Attn: President or Corporate Officer"); <u>In re Golden Books Family Entertainment</u>, 269 B.R. 300, 305 (Bankr. D.Del. 2001) (holding that service upon an unnamed "Asst. Controller" does not comply with F.R.B.P. 7004(b)(3) because the "notice documents were deficient because, among other things, they failed to address any of the copies of the notice to a person of authority or to a person authorized to accept service."); <u>Saucier v. Capitol One (In re Saucier)</u>, 366 B.R. 780, 784 (Bankr. N.D. Ohio 2007) (citing <u>Schoon</u> and holding that a debtor who served a complaint upon "Capitol One" upon an "office manager" at a post office box failed to comply with the requirements of F.R.B.P. 7004(b)(3) because "it has been generally held that this type of generic heading is insufficient to effectuate proper service under the Rule."); <u>see also</u> <u>Faulknor v. Amtrust Bank (In re Faulknor)</u>, 2005 Bankr. LEXIS 60, *5 (Bankr. N.D. Ga. 2005) (holding that service of a motion to redeem a car which was served to "Attn: President" did not satisfy F.R.B.P. 7004(h) because "service of the motion to redeem to the attention of an officer, without specifically naming the individual, fails to comply with Rule 7004 and the constitutional requirements of due process."); <u>In re Roby</u>, 2006 Bankr. LEXIS 4336 (Bankr. D.Md. 2006) (holding that a motion by the chapter 13 trustee to disallow a claim that was served by the trustee upon the "president" of the creditor did not satisfy Rule 7004(b)(3)).

For example in <u>Schoon</u>, the debtor filed a motion to avoid a lien pursuant to section 522(f) and served the creditor as follows: "HOMEOWNERS LUMBER CO, INC., Attn: President, 409 Petaluma Blvd South, Petaluma, CA 94952."  The court held this service did not comply with F.R.B.P. 7004(b)(3) and stated as follows:

"The creditor did not file opposition to the motion within the time allowed, and the debtors now seek entry of an order avoiding the lien by default. The sole issue before the court is whether the motion was properly served. The court determines that the motion was not served properly, and accordingly will not enter the order.

"Rule 4003(d) of the Federal Rules of Bankruptcy Procedure provides that a motion by a debtor to avoid a lien under section 522(f) is a contested matter governed by Rule 9014. Rule 9014 requires that a contested matter be served in the same manner as a summons and complaint as set forth in Rule 7004. Rule 7004(b)(3) provides that if a summons and complaint are served by mail on a corporation, they must be mailed to the attention of an officer or agent of the corporation. The debtors take the position that their service is proper under the rule; the court disagrees.

"Nationwide service of process by first class mail is a rare privilege which can drastically reduce the costs and delay of litigation. As a privilege, it is not to be abused or taken lightly. Where the alternative to service by mail is hiring a process server to serve the papers in person, it seems like a small burden to require literal compliance with the rule. By addressing the envelope "Attn: President" the debtors did not serve an officer, but rather an office. While service of an office is permitted to effect service on other types of entities (e.g. service on a municipality pursuant to Rule 7004(b)(6)), it is not a means of valid service on corporations under Rule 7004(b)(3).

1    and treat Citibank's claim as an unsecured claim, not a secured claim, but the Debtors never

2    properly served Citibank with the proposed plan.

3         In addition, the Debtors did not satisfy the requirements for lien stripping in a chapter 13

4    case. Specifically, Citibank has a mortgage against the Debtors' residence and, as such, it has a

5    secured claim in the case. Pursuant to section 1325(a)(2)(B) & (C) of the Bankruptcy Code, the

6    Debtors had to treat that secured claim in one of two ways (payment in full or abandonment of the

7    property). The chapter 13 plan of the Debtors did not satisfy these requirements.

8         Instead, the chapter 13 plan proposed to avoid the lien and pay Citibank as an unsecured

9    creditor. In order to achieve this result in a chapter 13 case, the Debtors had to obtain an order at

10   the beginning of the case that (1) valued the collateral of Citibank, (2) allowed the secured claim

11   of Citibank as unsecured for the purposes of payments under the plan and (3) provided for

12   avoidance of the mortgage at the end of the case (assuming the Debtors satisfied all requirements

13   under the plan). In addition, if the Debtors obtained such an order at the beginning of the case,

14   they were required to obtain an order at the end of the case avoiding the mortgage. The Debtors

15   did not accomplish any of these steps.

16        At the beginning of the case in 2010, the Debtors filed the requisite motion but they

17   abandoned that motion.[3] They did not prosecute the motion to completion. The Court indicated

18   at a hearing on January 13, 2011 regarding the motion that the Court (the prior presiding judge)

19

20

21         "Allowing service in the manner argued here by the debtors makes a joke of the requirement
22    that an officer be served; it takes no more work, just an additional line on the envelope. However,
      the Rule requires that an officer be served in order to insure that the corporation is put on notice that
23    it is liable to lose valuable rights. Where the procedure outlined in a Rule is less formal than the
      procedure it replaces, it should be strictly construed. The court finds that the method of service
24    employed by the debtors does not meet the requirements of Rule 7004(b)(3), and fails to meet
      minimum due process requirements.

25         "This ruling is hardly a disaster for movants or plaintiffs in bankruptcy litigation; it merely
      requires a little extra effort to determine the name of the president or other officer and make sure the
26    envelope is addressed to him or her, by name. This is a small price to pay to avoid having to effect
      personal service."

27   Id. at 49.

28         [3] See Docket #44 & 48.

1    would grant the motion if the Debtors satisfied a condition but they never did so.[4]  In addition, the

2    Debtors never obtained the required written order.[5]

3            In addition, three years later, at the end of the case in 2013, the Debtors had a duty to ask

4    the Court at that time to enter an order avoiding Citibank's lien.  In a normal chapter 13 case

5    involving lien stripping of a junior lien, the debtors file a request at the end of the case (after

6    making all plan payments) stating that they have completed all their requirements under the plan

7    and, therefore, are entitled to entry of an order avoiding the mortgage.  In this case, however, the

8    Debtors took no action at all.  They filed no motion, no adversary proceeding or any request of

9    any kind to avoid the mortgage.  They took none of the required action.  As a result, the Debtors

10   received their discharge and the case was closed but the mortgage remained valid.

---

[4] In 2010, the Debtors filed the required motion and an amended motion (docket #44 & 48).  The judge originally assigned to this case (the Honorable Catherine Bauer) considered the amended motion at a hearing on January 13, 2011.  The undersigned judge has reviewed the audio file for the hearing and, at that hearing, Judge Bauer (ret.) had several concerns about service of the motion and a discussion occurred on the record.  Ultimately, Judge Bauer indicated orally that she would grant the motion on the condition that counsel for the moving party file a declaration addressing certain service issues.  Unfortunately, that condition was never satisfied.  Counsel agreed on the record to provide a declaration but never did so.  Counsel never filed the declaration requested by Judge Bauer.  Counsel for the Debtors has stated that "Judge Bauer granted the Motion" at that hearing.  See Docket #88, page 2, paragraph 7.  However, counsel does not mention that the grant was conditional and the condition was not satisfied.

[5] The conditional oral ruling by Judge Bauer occurred on January 13, 2011.  With or without the condition, an oral ruling is not effective without a written court order.  Pursuant to the local rules, it was the duty of the moving party to submit a proposed written order to the Court.  Unfortunately, it appears that counsel either (1) never did so or (2) failed to follow-up.  On this issue, counsel for the Debtors has stated the following: "Given the passage of time, I cannot say with certainty whether I prepared and lodged an order or whether one was lodged but never signed and entered by the Court."  See Docket #88, page 3, paragraph 11.  The undersigned judge has no knowledge on the subject because the case had not yet been assigned to him.

However, the Court does note that counsel agreed at the hearing on January 13, 2011 to provide Judge Bauer with a declaration regarding service and never did so.  Therefore, given that the declaration was never submitted, it seems likely that the order was also never submitted to the court.  Both were likely forgotten by counsel.

But either way, the Debtors did not act diligently.  If the Debtors failed to prepare a proposed order granting their motion and failed to submit it to the prior judge for consideration and execution, then they violated the local rules and did not sufficiently prosecute the motion to completion.  Likewise, even if they did submit the order and the Court lost it (or otherwise failed to act), the duty remained upon the Debtors to see the matter through to completion.  The duty remained on the Debtors to promptly bring the matter to the attention of the Court to ensure the proper order was entered promptly.  Counsel for the Debtors knew how to file such a motion because counsel eventually did so, nine years later.  See Docket #88.  On June 12, 2019, counsel for the Debtors filed an application for entry of an order nunc pro tunc that would grant the 2010 motion.  But that was nine years after the filing of the motion.  That delay constitutes inexcusable neglect.

1    Time passed.  Indeed, six years passed from 2013 to 2019.  The case was closed in 2013

2    but the Debtors took no action until 2019 when they filed a motion to reopen the case.  Then, the

3    following year, the Debtors filed a motion to avoid the mortgage of Citibank in 2020.  That

4    motion is seven years late.[6]

5    As a result, the Court struggles to see how the Debtors can achieve the relief they now

6    seek.  Under the terms of their chapter 13 plan, the Debtors were required to obtain an order

7    allowing Citibank to be paid as an unsecured creditor.  Indeed, the entire point of their plan was to

8    treat Citibank as an unsecured creditor, not a secured creditor.

9    For this very reason, the motion they filed in 2010 specifically asked for an order allowing

10   Citibank an unsecured claim.  The motion asked the Court to enter an order stating that Citibank's

11   "claim on the junior position lien shall be allowed as a non-priority general unsecured claim in the

12   amount per the filed Proof of Claim."[7]  This was necessary relief in order to treat Citibank as an

13   unsecured creditor in the case (as opposed to a secured creditor).  However, the Debtors never

14   obtained this order and, therefore, Citibank received no allowed unsecured claim and no

15   distributions as an unsecured creditor.  Meanwhile, all the other general unsecured creditors were

16   paid 100% of their claims.[8]

17   As the Court understands it, the Debtors do not presently seek to pay Citibank the 100%

18   that all other general unsecured creditors received.  The Debtors do not seek to treat Citibank

19   equally with the other general unsecured creditors.  Instead, the Debtors now seek to void the lien

20   of Citibank and pay it nothing on account of the resulting unsecured claim.

21   In contemplating this strategy, it should be self-evident that such relief would not be

22   possible at the beginning of a case.  In other words, if the Debtors had proposed at the outset to

23   lien strip Citibank and pay nothing to Citibank as an unsecured creditor (while paying other

24

25       [6] In the Motion to Avoid Lien, the Debtors assert that they completed all their plan payments and now seek an
     order voiding the lien of Citibank.  However, the Debtors filed the Motion to Avoid Lien in 2020.  They should have
26   filed it in 2013 when their plan completed.  That was their duty and they failed to act.  The Motion to Avoid Lien is
     seven years late.

27       [7] See Docket #44, page 3, paragraph 4(c).

28       [8] See Docket #79, page 2.

- 11 -

unsecured creditors 100%), such a plan would be unconfirmable on its face. Existing law does

not permit such a plan. A fortiori, if the Debtors had asked for such relief at the end of the

chapter 13 case in 2013, it would not have been permissible under the law. A fortiori, such relief

seems unattainable at this time, eight years after the case concluded. Waiting for years does not

make a request legally permissible that was impermissible during the case.[9]

---

[9] Certain comments in the Motion to Disallow Claim tend to indicate that the Debtors believe they can achieve this outcome by arguing that Citibank should have no claim because it filed a secured proof of claim after the claims bar date. If that is the position of the Debtors, the Court sees the following three problems.

First, no creditor needs to file a proof of claim in a chapter 13 case in order to retain a mortgage or lien. Liens ride through in bankruptcy. In re Mansaray-Ruffin, 530 F.3d 230, 235 (3rd Cir. 2008) ("At the outset, it must be noted that bankruptcy has traditionally afforded special status to liens, allowing them to pass through bankruptcy unaffected."); Cen-Pen Corporation, 58 F.3d 89, 92 (4th Cir. 1995) ("To begin with, appellants' argument ignores the general rule that liens pass through bankruptcy unaffected."). Therefore, Citibank need not have filed any proof of claim in the case to retain its lien.

And when Citibank did file its proof of claim, Citibank asserted that it was a secured creditor. It was the Debtors (not Citibank) that alleged that Citibank should be treated as an unsecured creditor but the Debtors never obtained the order to treat Citibank as an unsecured creditor. They filed the motion to do so but they abandoned that motion. But even if they had obtained an order finding that Citibank's secured claim should be treated as an unsecured claim, the Federal Rules of Bankruptcy Procedure give a creditor an extension of time to file an unsecured claim. See F.R.B.P. 3002(c)(3) (providing for an extension of time to file an unsecured claim if the Court "avoids the entity's interest in property").

Stated differently, Citibank's proof of claim demonstrates that it was content to be treated as a secured creditor in this case. In order for the Debtors to convert Citibank's secured claim to an unsecured claim, the Debtors had the burden of taking action (and completing that action). Unfortunately, they did not do so. And, if they had, the rules would have given Citibank an extension of time to file a proof of claim.

Second, even if the Citibank claim had been untimely and the Debtors successfully obtained an order disallowing the claim of Citibank as untimely filed, it would not invalidate the lien of Citibank. The decision in In re Kressler, 252 B.R. 632 (Bankr. E.D. Pa. 2000) illustrates the point nicely. In that case, the Court held that disallowance of an untimely secured claim does not impact the creditor's lien. Specifically, the court stated: "We first note that our February 2, 2000 Order disallowing Litton's claim does not address the substance of Litton's claim and does not call into question the validity of Litton's lien. Instead, this Order simply disallows Litton's claim solely because it was filed late. Hence, entry of our February 2, 2000 Order in no way impacts the validity of Litton's lien and places Litton in no worse a position than any other secured creditor who fails to file a proof of claim. Matter of Tarnow, 749 F.2d 464, 465–67 (7th Cir.1984); Bisch v. United States (In re Bisch), 159 B.R. 546, 548–50 (9th Cir. BAP 1993). Since the failure of a secured creditor to file a proof of claim will not result in the loss of the creditor's lien and generally speaking, after the bankruptcy case is concluded, the creditor may pursue the collateral to satisfy its lien, Estate of Lellock v. Prudential Ins. Co. of America, 811 F.2d 186, 187–88 (3rd Cir.1987); Tarnow, 749 F.2d at 465–67; Matter of Baldridge, 232 B.R. 394, 395–96 (Bankr.N.D.Ind.1999); Bisch, 159 B.R. at 548–50; see also 11 U.S.C. § 506(d)(2), such a secured creditor would be a 'party in interest' and would have standing to object to confirmation of a debtor's plan which purports to cramdown and avoid the secured creditor's lien." Id. at 633-34.

Third, the evidence filed by the Debtors tends to indicate that Citibank was not properly served with the notice of case commencement or the deadline to file claims. Specifically, the Debtors listed Citibank on Schedule D and the master mailing matrix with two addresses: "Citibank, P.O. Box 769006, San Antonio, TX 78245-9006" and "Citibank, P.O. Box 769013, San Antonio, TX 78245-9013." See Docket #1. The clerk of the Court then used these addresses in sending the notice of the case commencement with the notice of the claims bar date. See Docket #34 & 36.

1       To the contrary, even if the relief sought by the Debtors initially had legal merit, the

2 doctrine of laches and the passage of time would vitiate any such merit. Simply stated, whatever

3 rights the Debtors had, they slept on them. It just seems that too much time has passed and too

4 many missteps occurred in the case.

5       All of the reasons militate in favor of converting the matters to an adversary proceeding.

6

7 **IV.    AN ADVERSARY PROCEEDING IS ALSO NECESSARY TO ENSURE**

8       **CONSTITUTIONAL NOTICE.**

9       Finally, an adversary proceeding will provide the heightened degree of notice that is not

10 only just and fair but constitutionally required. The Due Process Clause of the United States

11 Constitution requires fair and sufficient notice to a party before deprivation of their property

12 rights such as extinguishing a lien. For example, the Third Circuit Court of Appeals concluded in

13 <u>In re Mansaray-Ruffin</u>, 530 F.3d 230 (3rd Cir. 2008) that a chapter 13 debtor must initiate an

14 adversary proceeding if she seeks to invalid a mortgage on her residence. The Court in

15 <u>Mansaray-Ruffin</u> held that such a result is constitutionally required and stated:

16

17       However, these addresses do not match other documents provided by the Debtors. For example, when the

18 Debtors filed their motion in 2010 (and the amended motion) at the beginning of the case to avoid the lien of Citibank and treat them as a general unsecured creditor (the motion they failed to prosecute to completion), they included billing

19 statements from Citibank, N.A. for the junior mortgage. Those billing statement have two addresses that are different than the ones the Debtors used on schedules and the master mailing matrix. <u>See</u> Docket #44, page 9 of 12 and docket

20 #48, page 9 of 12. In other words, the Debtors did not use any of the addresses from the billing statements when providing notice to Citibank, N.A. in this case.

21       Similarly, the Debtors did not use the addresses on Schedule D or the master mailing matrix when serving

22 Citibank with the motion and amended motion in 2010. Instead, the Debtors used different addresses (which, again, were not the addresses from the billing statements).

23       Eventually, Citibank clearly did learn of the bankruptcy case because it filed a proof of claim. But the two

24 addresses listed by Citibank on page one of its proof of claim do not match the addresses used by the Debtors on Schedule D or the master mailing matrix. Likewise, the loan agreement and the deed of trust attached to the proof of

25 claim (which were both signed by the Debtors) include an address for the lender (One Sansome Street, San Francisco, CA 94104) but the Debtors did not use that address on Schedule D or the master mailing matrix.

26       Similarly, when the Debtors filed the two motions that are the subject of this decision (the Motion to Avoid Lien and the Motion to Disallow Claim), they did not use the addresses from Schedule D or the master mailing matrix.

27       Overall, the Court has been unable to find any evidence in the record that the addresses for Citibank used by

28 the Debtors on Schedule D and the master mailing matrix were accurate or ever used again in this case with respect to any matter pertaining to the junior mortgage.

Before it could be deprived of its property interest in its lien, [the creditor] had the constitutional right to a level of process that was "appropriate to the nature of the case." See Mullane, 339 U.S. at 313, 70 S.Ct. 652. As we emphasized above, our determination regarding the process due in any particular case depends on the context. A crucial piece of the context here is the existence of a binding Federal Rule of Bankruptcy Procedure directly on point that makes clear that a lien may only be invalidated through an adversary proceeding. Just as a procedural prescription in the statute guided us in determining the process due to the creditor in Harbor Tank Storage, 385 F.2d at 114–15, a procedural prescription in the Rules guides us here. In Harbor Tank Storage, we found that a creditor had the due process right "to assume that he w[ould] be sent all the notices to which he [wa]s entitled under the Act" before his claim could be barred. Id. at 115. Similarly, we now conclude that EMC had the due process right to assume that, unless Mansaray–Ruffin commenced the adversary proceeding required by the Rules and served it with a complaint and a summons, its lien could not be invalidated. Whatever actual knowledge EMC may have had regarding the plan's treatment of its lien did not eliminate this right and neither did the provisions of § 1327.

Id. at 242.

Similarly, the court in In re Forrest, 424 B.R. 831 (Bankr. N.D. Ill. 2009) aptly described the issues as follows:

"No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[D]ue process requires 'notice and the opportunity for hearing appropriate to the nature of the case' prior to deprivation of property rights." Hanson, 397 F.3d at 486–87 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "Due process does not always require formal, written notice of court proceedings." In re Pence, 905 F.2d 1107, 1109 (7th Cir.1990). But "'where the Bankruptcy Code and Bankruptcy Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect.'" Hanson, 397 F.3d at 486 (quoting In re Banks, 299 F.3d 296, 302 (4th Cir.2002)) (student loan debt not discharged when Chapter 13 debtor did *835 not file an adversary proceeding because creditor was entitled to heightened notice under 11 U.S.C. § 523(a)(8) and Fed. R. Bankr.P. 7001(6)). Contra, Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1203–05 (9th Cir.2008) (notice to a student loan creditor of the bankruptcy case itself satisfied due process because the creditor was on constructive or inquiry notice of the contents of the Chapter 13 plan).

In this Circuit, therefore, where the Bankruptcy Code and Bankruptcy Rules require the debtor to prosecute an adversary proceeding, the debtor cannot instead proceed by a provision in the Chapter 13 Plan and expect it to bind the

1    creditor. <u>See</u> <u>Hanson</u>, 397 F.3d at 486.

2          . . .

3
4          Under the Bankruptcy Rules, the Bankruptcy Code, and the Constitution,
     Forrest may not strip off Litton Loan Servicing's wholly unsecured junior
     mortgage on her home through her Chapter 13 Plan. The Code forbids
5    modification of the lien through a plan, the Bankruptcy Rules require an adversary
     proceeding for such relief, and Constitutional Due Process entitles Litton Loan
6    Servicing to heightened notice through a complaint and service of summons in an
7    adversary proceeding.

8    <u>Id.</u> at 834-36.

9

10         Likewise, the court in <u>In re Smith</u>, 514 B.R. 331, 338-39 (Bankr. S.D. Ga. 2014) (emphasis

11   added) provided the following articulate thoughts about constitutional notice and the need for an

12   adversary proceeding:

13

14         Therefore, based on precedent of the Supreme Court of Georgia, deeds to
     secure debt survive bankruptcy intact and are therefore presumptively "valid"
15   absent a contrary determination authorized by the Bankruptcy Code. The avenue
     to contest "validity" is created in Rule 7001(2) and appears nowhere else. While
16   § 506(d) declares certain liens "void," it does not dictate the procedural method
     required to obtain a judicial adjudication of that fact.
17
18         Only Rule 7001 provides that mechanism, and I hold that the procedural
     safeguards inherent in that rule should not be disregarded based on narrow
19   definitions of "validity" adopted by many courts. <u>The Due Process Clause of the
     Fifth Amendment forbids the deprivation of a property right without due process
20   of law and the adoption of a Rule of Procedure by the judiciary constitutes the
     template for assessing due process.</u>
21
22         I do not choose to narrowly parse the term "validity" in the face of Georgia
     law which makes these instruments presumptively valid. Because the deed to
23   secure debt retains in rem viability under Georgia law, displacement of those rights
     must be viewed as a "validity" challenge. Rule 7001 is clear; it does not state that
24   one type of validity challenge is covered by the Rule while others are not. Rather,
     any challenge to the viability of a lien must be considered within the confines of an
25   adversary proceeding under the Rules and as a matter of due process. <u>See</u> <u>In re
     Forrest</u>, 424 B.R. 831, 833 (Bankr. N.D. Ill. 2009) ("Valuations may be
26   appropriate for adequate protection, impairment, or similar purposes, but when the
     existence of the lien itself is at issue, then the "validity" and "extent" of the lien are
27   certainly at issue, so an adversary proceeding is necessary."); <u>see also</u> <u>In re
     Enriquez</u>, 244 B.R. 156, 158 (Bankr. S.D. Cal. 2000) (requiring an adversary),
28

                                        - 15 -

1    abrogated on other grounds by <u>Zimmer</u>, 313 F.3d 1220; <u>In re Crestwood Co.</u>,
2    127 B.R. 213, 215 n.1 (Bankr. E.D. Ark. 1991) (same).

3          I recognize the end game to the litigation may be the same, but we live in a
legal system which is constrained both by substantive law and procedural
4    protections. One cannot ignore the latter in adjudicating this issue, even if the
outcome is not changed, anymore than one can bypass the Fourth or Sixth
5    Amendments in the name of efficiency.

6
      And in fact, there is no way to know if the result would be the same. This
7    Plan provision was unopposed by the creditor. Did it agree that Debtor was legally
entitled to this outcome, or did it not pay sufficient attention to the Plan
8    provisions? Perhaps it should have done so, but part of the purpose of Rule 7001
must certainly be to ensure that when the issue is the enforceability of a state
9    created lien, the defendant is entitled to the most infallible degree of notice of the
nature and serious consequences of the proceeding brought against it. The
10    procedural safeguards of adversary proceedings, including the Rules of Pleading of
11    Bankruptcy Rule 7008 which require a specific "demand for relief sought," are
calculated to achieve this purpose.

12
<u>Id.</u>, 514 B.R. at 338-39.
13

14

15    **V.    IF THE COURT IS NOT CAREFUL, BAD FACTS WILL MAKE BAD LAW.**

16          The adage "bad facts make for bad law" certainly seems relevant in this case. The Court

17    faces a quagmire. So many things have gone wrong in this bankruptcy case. Nevertheless, the

18    Debtors did receive a discharge which is a significant benefit to them. But further relief seems

19    more than a bit problematic given the considerable legal defects that have arisen over the last

20    eleven years.

21          The situation would be different if the Debtors proposed at this time to reinstate their

22    chapter 13 case and extend it long enough to pay Citibank 100% of its claim (as received by the

23    other unsecured creditors). Treating Citibank as a general unsecured creditor would certainly

24    seem fairer if Citibank received the same treatment that the other general unsecured creditors in

25    this case actually received. And while the Debtors would still bear the heavy burden of

26    overcoming the six-year delay and laches issues, at least the relief requested would, perhaps, seem

27    theoretically possible in chapter 13.

28

1    However, the Debtors do not seek such relief. Instead, they want to void a second

2 mortgage, pay the creditor nothing and still pay all other unsecured creditors 100%. Chapter 13

3 does not permit such a result.

4    In addition, the Debtors seek this relief at this time as a result of errors they made (not

5 Citibank). The Debtors (1) failed to properly serve Citibank with the chapter 13 plan, (2) failed to

6 diligently obtain an order at the beginning of the case to treat Citibank's secured debt as an

7 unsecured claim and pay it as such during the chapter 13 case, (3) failed to take any action to

8 avoid the lien of Citibank when the case concluded in 2013 and (4) allowed the case to close and

9 waited six years before taking any further action. None of these actions were the fault of any of

10 the creditors in this case. So, it would be highly unusual if the Debtors could achieve a result

11 eleven years later that was unachievable during the case because of errors and omissions by the

12 Debtors.

13

14 **VI.    CONCLUSION.**

15    Accordingly, for all these reasons, the relief sought by the Debtors at this late date appears

16 unachievable. However, the Court makes no ruling on the substantive issues at this time. Instead,

17 the Court simply converts the matter to an adversary proceeding. Procedural fairness and the

18 Federal Rules of Bankruptcy Procedure require an adversary proceeding to provide clear notice to

19 the adverse party.[10]

20

21

22    [10] Ironically, converting the matter to an adversary proceeding may very well be the best pathway to
stimulating the parties to resolve the matter without judicial intervention. As sometimes occur, results in cases are
23 not always driven purely by the law. Sometimes litigants simply give up and move on.

    In this case, the Debtors claim that Citibank may agree to everything the Debtors desire. Counsel for the
24 Debtors has said on the record that an unnamed person working for Citibank may concede to the Debtors' requests. It
may be that the passage of time, as a practical matter, may have simply caused Citibank to close its file for this loan
25 and write off the balance. If so, then the failure of the Debtors to comply with the law may not prevent them from
achieving their goals.

26    If the parties have reached an agreement then no judicial action is necessary. Citibank can easily agree, if it
so desires, to re-convey its mortgage and withdraw its proof of claim. The Court need not order anything (nor can it
27 likely do so).

28    However, if the parties cannot resolve the matter, then an adversary proceeding is required.

1      The Court directs the Debtors to file the adversary complaint within thirty days and that

2   complaint must be thorough.  It must clearly contain all the relief sought by the Debtors.

3      Specifically, the complaint needs to clearly assert that the Debtors seek the following

4   relief: (1) avoid and extinguish the mortgage of Citibank, (2) disallow the secured proof of claim

5   of Citibank, (3) not allow any unsecured claim in favor of Citibank, (4) not make any

6   distributions to Citibank on account of an unsecured claim and (5) discharge all obligations owed

7   to Citibank.  The complaint needs to assert this relief clearly and starkly along with all the other

8   normal provisions in a complaint including jurisdiction allegations, party information and a full

9   recitation of relevant factual allegations.  In order to provide sufficient notice, the complaint

10   should have (among other things) a caption on the first page with a document title as follows (or

11   comparable language): "Complaint To Avoid Lien of Citibank, N.A., Disallow All Claims, Pay

12   Creditor Nothing And Discharge All Obligations to Citibank, N.A."  The Debtors shall attach a

13   copy of this memorandum of decision and the accompanying order as Exhibits 1 and 2 to the

14   complaint.  They should attach as Exhibit 3 a recorded copy of the instrument that the Debtors

15   seek to avoid and attach as Exhibit 4 the proof of claim to which they object.  The Debtors should

16   attach other appropriate exhibits to the complaint.

17      Again, in making this ruling, the Court is not suggesting that the Debtors can achieve their

18   goals by adversary procedure (or any other procedure).  To the contrary, as stated above, the

19   Court has considerable doubts.  However, if any path exists to the relief sought, an adversary

20   proceeding is required to get there.  Only an adversary proceeding will provide sufficient notice of

21   the unusual relief sought by the Debtors at this very late stage.

22   IT IS SO ORDERED.

23

24

25

26

27   Date: February 10, 2021

28

Wayne Johnson
United States Bankruptcy Judge

- 18 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

COMPLAINT

1

2

3

4

5

6

7

**FILED & ENTERED**

FEB 10 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY **gooch**    DEPUTY CLERK

8

9

10

11

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

12

13

14

15

16

17

In re:

LAWRENCE EUGENE FORESTER and
VICKI LOVELL FORESTER,

Debtors.

Case No.: 6:10-bk-16163-WJ

CHAPTER 13

**ORDER CONVERTING PENDING
MATTERS TO AN ADVERSARY
PROCEEDING**

18

19

20

21

22

23

Currently pending before the Court are two motions by the debtors, Lawrence and Vicki

Forester ("Debtors"): (a) a motion to void the mortgage of Citibank, N.A. [docket #105] and

(b) an objection to the proof of claim of Citibank, N.A. [docket #110]. Earlier today, the Court

entered a separate memorandum of decision regarding the matters. For the reasons set forth

therein, the Court ORDERS:

24

25

26

27

28

1.       The pending matters are hereby converted to one adversary proceeding. Within

thirty days the Debtors should initiate a separate adversary proceeding by filing an adversary

complaint. The Debtors are directed to file one thorough complaint that clearly contains all the

relief sought by the Debtors in both motions. Specifically, the complaint needs to clearly assert

that the Debtors seek the following relief: (a) avoid and extinguish the mortgage of Citibank,

(b) disallow the secured proof of claim of Citibank, (c) not allow any unsecured claim in favor of Citibank, (d) not make any distributions to Citibank on account of an unsecured claim and (e) discharge all obligations owed to Citibank. The complaint needs to assert this relief clearly and starkly along with all the other normal provisions in a complaint including jurisdiction allegations, party information and a full recitation of relevant factual allegations. In order to provide sufficient notice, the complaint should have (among other things) a caption on the first page with a document title as follows (or comparable language): "Complaint To Avoid Lien of Citibank, N.A., Disallow All Claims, Pay Creditor Nothing And Discharge All Obligations to Citibank, N.A." The Debtors shall attach a copy of the court's memorandum of decision and this order as Exhibits 1 and 2 to the complaint. They should attach as Exhibit 3 a recorded copy of the instrument that the Debtors seek to avoid and attach as Exhibit 4 the proof of claim to which they object. The Debtors should attach other appropriate exhibits to the complaint.

2.    In order to provide time for the Debtors to file their complaint, the Court hereby continues the pending hearings regarding the two motions from February 26, 2021 at 1:00 p.m. to May 13, 2021 at 2:00 p.m.

IT IS SO ORDERED.

Date: February 10, 2021

Wayne Johnson
United States Bankruptcy Judge

- 2 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT C**

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    Filed 04/06/20    Page 32 of 53 04/06/20 16:59:44    Desc
Main Document    Page 9 of 25

Case 6:10-bk-16163-CB    Claim 10    Filed 09/30/11    Desc Main Document    Page 1 of 2

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT    CENTRAL DISTRICT OF CALIFORNIA    (RIVERSIDE) | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>VICKI L. FORESTER -- SS No.<br>LAWRENCE E. FORESTER -- | Case Number:<br>1016163 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Citibank, N.A. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>Citibank, N.A.<br>PO Box 140609<br><br>Irving, TX 75014-0609<br>Telephone number: (800)310-5734 | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>Citibank, N.A.<br>P.O. Box 688971<br><br>Des Moines, IA 50368-8971<br>Telephone number: (800)310-5734 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| **1. Amount of Claim as of Date Case Filed:**    $ 110,130.20 | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** Mortgage Loan<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier -- 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:**    4718<br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☒ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property: $_____  Annual Interest Rate  7.10000 %<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $    4,636.98    Basis for perfection:    Security Instrument<br><br>Amount of Secured Claim: $    110,130.20    Amount Unsecured: $    0 | ☐ Contributions to an employee benefit plan -- 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use -- 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units -- 11 U.S.C. §507 (a)(8).<br><br>☐ Other -- Specify applicable paragraph of 11 U.S.C. §507 (a)(_____). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **Amount entitled to priority:**<br><br>$    0<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| **Date:**<br>09/30/2011 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | **FOR COURT USE ONLY** |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 6:10-bk-16163-WJ   Doc 140   Filed 03/10/21   Entered 03/10/21 17:45:33   Desc
Case 6:10-bk-16163-WJ   Main Document   Filed 04/06/20   33 of 53 04/06/20 16:59:44   Desc
Main Document   Page 10 of 25

Case 6:10-bk-16163-CB   Claim 10   Filed 09/30/11   Desc Main Document   Page 2 of 2

# Exhibit 'A'

Case No.: 1016163

Debtors:   VICKI L. FORESTER
LAWRENCE E. FORESTER –


Address:   4525 CENTER AVE

NORCO, CA  92860

Loan No.: 4718

On filing petition 03/04/10 debtor(s) owed claimant $110,130.20.


ARREARAGES owed as of 03/04/10, the date of filing of the petition.

| From | To | Type of Charge | # | Unit Charge | Total |
|------|----|----|---|---|---|
| 04/04/2010 | 09/04/2010 | Payment | 6 | 772.83 | 4,636.98 |
| | | | – | – | – |
| | | | | Subtotal: | 4,636.98 |
| | | | | TOTAL: | 4,636.98 |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of the filing of the bankruptcy.

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document 04/06/20  Page 34 of 53 04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Claim Document    Page 30 of 25 Desc  docs    Page 1 of 14

# FIXED RATE HOME EQUITY LOAN NOTE

citibank

Date: 04/28/2006

Borrower(s):    **VICKI L FORESTER**
               **LAWRENCE L FORESTER**

Property Address:    **4525 CENTER AVENUE**
                     **NORCO, CA   1860-1512** (the "Property")

1.  **BORROWER'S PROMISE TO REPAY**

In return for a Fixed Rate Home Equity Loan ("your Loan") you have received on the date hereof, you promise to pay **$115,000.00** (this amount is called "principal"), plus interest to the order of the Lender. The Lender is CITIBANK (WEST), FSB, which has an address at one Sansome Street, San Francisco, CA 94104. You understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  **INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. You will pay interest at the yearly rate of **7.350%**. The interest rate required by this Section 2 of this Note is the rate you will pay both before and after any default described in Section 6(D) of this Note.

3.  **PAYMENTS**

    **(A) TIME AND PLACE OF PAYMENTS**
    You will pay any principal and interest under this Note by making payments every month. You will make your monthly payments on the **4th** day of each month beginning on **06/04/2006**.

    You will make these payments every month until you have paid all of the principal, interest and any other charges described below that you may owe under this Note. Your monthly payments will be applied to interest before principal. If on **05/04/2036**, you still owe amounts under this Note, you will pay those amounts in full on that date, which is called the "maturity date." You will make your monthly payments at the address listed on your monthly statement or at a different place if required by the Note Holder.

    **(B) AMOUNT OF MONTHLY PAYMENTS**
    Your monthly payment will be in the amount of **$792.31**. Your final payment will be more or less than the amount scheduled, depending upon your payment record.

4.  **BORROWER'S RIGHT TO PREPAY; EARLY CLOSURE RELEASE FEE**

You have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When you make a prepayment, you must tell the Note Holder in writing that you are doing so. A prepayment of all of the unpaid principal is a "full prepayment." A prepayment of only part of the unpaid principal is a "partial prepayment." You may make partial prepayments without paying any penalty. The Note Holder will use all of your prepayments to reduce the amount of principal that you owe under this Note. If you make a partial prepayment, there will be no changes in the due date or in the amount of your monthly payment unless the Note Holder agrees in writing to those changes.

If the Lender or the Note Holder has paid the closing costs for this Note and, if during the first 36 months after the date hereof you request the Lender or the Note Holder to terminate your Loan or take any other action that would result in the release of the Security Instrument (defined in paragraph 11), then you will be required to pay an Early Closure Release Fee that consists of any third party processing fees and any costs that the Lender or the Note Holder incurred to make your Loan. The specific costs that comprise the Early Closure Release Fee are itemized on the HUD-1a Form which will be provided to you by Lender. If charged, the Early Closure Release Fee will appear as a separate charge that must be paid before this Note and Security Instrument will be satisfied.

1 of 5

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    04/06/20    Page 35 of 53    Entered 04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Claim Instrument    Filed 20/01/25 Desc docs    Page 2 of 14

## FIXED RATE HOME EQUITY LOAN NOTE                                    citibank®

5. **LOAN CHARGES**

If a law, which applies to your loan and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with your Loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from you which exceed the permitted limits will be refunded to you. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. **BORROWER'S FAILURE TO PAY; OTHER REQUIREMENTS**

(A) **LATE CHARGE FOR OVERDUE PAYMENTS**
If the Note Holder has not received the full amount of any monthly payment within 15 calendar days from the due date, you will pay a late charge to the Note Holder. The amount of the charge will be the greater of 6% of the overdue payment of principal and interest of $5. You will not be charged a late charge on an unpaid late charge. You will pay this late charge promptly but only once on each late payment.

(B) **OTHER FEES**
If any payment is returned unpaid for any reason, Note Holder will charge you a $25 returned item fee. In addition, if for any purpose other than a billing error inquiry or a tax audit inquiry, you request the Note Holder to provide copies of your loan documents, the Note Holder may charge you $2 per copy and a $20 per hour document research fee. You may have to pay a fee to release a prior lien or security interest in the Property. You also agree to pay the Note Holder any other fees or charges provided for in the Security Instrument, otherwise provided for herein or by law.

(C) **INSURANCE**
You agree to carry insurance on the Property which secures your Loan. The insurance that you carry with respect to the Property must cover the replacement value of all improvements on the Property. If Borrower fails to maintain any of the coverages described above, Note Holder may obtain insurance coverage, at Note Holder's option and Borrower's expense. Note Holder is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Note Holder, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Note Holder under this Section shall become additional debt of Borrower secured by the Security Instrument. These amounts shall bear interest at the rate set forth in Section 2 Interest from the date of disbursement and shall be payable, with such interest, upon notice from Note Holder to Borrower requesting payment.

(D) **DEFAULT**
A default will occur under this Note if (i) you do not pay the full amount of each monthly payment on the date it is due or if you fail to meet any other repayment terms of this Note for any outstanding balance, (ii) there has been fraud or a material misrepresentation by you in connection with the making of your Loan, (iii) you take any action or fail to take any action which adversely affects the Property or Note Holder's security interest in the Property, including, but not limited to, a transfer of title to the Property or sale of the Property without Note Holder's permission, a failure to maintain any required insurance on the Property, a failure to pay taxes on the Property, or the filing of a lien senior to that held by the Note Holder, (iv) one of the obligors under this Note dies and, as a result, the Note Holder's security interest in the Property is adversely affected, (v) the Property is taken through eminent domain, (vi) a lienholder commences a foreclosure action with respect to the Property, (vii) you commit waste or otherwise destructively use or fail to maintain the Property in a way that adversely affects the Property, (viii) there is illegal use of the Property which could subject the Property to seizure, (ix) you move out of the Property and the Note Holder's security interest in the Property is thereby adversely affected, (x) you are or become an "executive officer" of Note Holder as defined in Federal Reserve Board Regulation O and Note Holder determines to require payment in full to comply with federal regulation, (xi) you or any of your co-borrowers file for bankruptcy or become the subject of a bankruptcy filing, or (xii) you default under the terms and conditions of any agreement, note or contract that you have with Note Holder or another creditor.

(E) **NOTICE OF DEFAULT**
If you are in default, the Note Holder may send you a written notice telling you that you are in default, and the Note Holder may accelerate payment of your Loan (i.e. require you to pay the balance due and owing under this Note, including the full

2 of 5

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    04/06/20    Page 36 of 53    Entered 04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Main Document 2    Filed 03/04/25 Desc docs    Page 3 of 14

## FIXED RATE HOME EQUITY LOAN NOTE                               cítibank

amount of principal which has not been paid, all accrued and unpaid interest that you owe, and any other fees and charges of any kind that you owe). The date that the Note Holder requires you to pay the balance due under this Note must be at least 30 days after the date on which the notice of acceleration is delivered or mailed to you.

### (F) NO WAIVER BY NOTE HOLDER

Even if, at a time when you are in default, the Note Holder does not require you to pay immediately in full as described above, the Note Holder will still have the right to do so if you are in default at a later time.

### (G) NO WAIVER OF DEMAND FOR IMMEDIATE PAYMENT IN FULL

Any payments accepted by the Note Holder, after the Note Holder has required you to pay immediately in full as described above, shall not constitute a waiver of any kind or description by the Note Holder if the Note Holder returns the amount of such payment to you. In such event, your obligation to pay immediately in full shall continue in the same way as if such payment had not been accepted by the Note Holder.

### (H) PAYMENT OF NOTE HOLDER'S COSTS AND EXPENSES

If the Note Holder has required you to pay immediately in full as described above, the Note Holder will have the right to be paid back by you for all of its costs and expenses in enforcing this Note and the Security Instrument to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees and other collection costs.

### (I) RIGHTS AND REMEDIES OF NOTE HOLDER

If a default occurs under this Note or the Security Instrument, Note Holder shall have the right to exercise any and all of its rights and remedies set forth herein and under the Security Instrument and as otherwise allowed by law, including but not limited to, the right to demand payment in full of all amounts due and owing with respect to your Loan, to bring an action against you and the right to bring a foreclosure action against your Property.

7.  **GIVING OF NOTICES**

All notices provided for in this Note or in the Security Instrument shall be in writing and shall be deemed given (i) when delivered on a business day if delivered personally, (ii) on the day after deposit with any overnight courier if such date is a business day, (iii) three days after deposit in the United States mail, if delivered by certified mail, return receipt requested, postage prepaid and addressed to you at the address set forth on the first page of this Agreement or addressed to the customer service address shown on your monthly statement.

8.  **CREDIT INFORMATION**

You understand and agree that Note Holder may obtain credit reports for credit applications and for updates, renewals or extensions of the credit granted. Upon request, Note Holder will inform you if a report has been obtained and will give you the name and address of the agency that furnished the report. You also agree that Note Holder may obtain and use credit reports and other information that Note Holder has obtained in a lawful manner consistent with Note Holder's privacy policies about you for subsequent solicitations or for any other lawful purpose.

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person, who takes over these obligations, including the obligations of grantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of you together. This means that any one of you may be required to pay all of the amounts owed under this Note.

10. **WAIVER**

The Note Holder may, without losing any of its rights under this Note, (i) accept late payments, (ii) accept partial payments marked "paid in full," and (iii) delay in enforcing any of its rights under this Note. You and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor and protest. "Presentment" means the right to require the Note Holder to demand payments of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice that amounts due have to be paid. "Protest" means the right to require the Note Holder to obtain an official

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    Page 37 of 53    Entered 04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Main Document    Page 4 of 25    Desc  docs    Page 4 of 14

# FIXED RATE HOME EQUITY LOAN NOTE                    citibank

certification of nonpayment. No change or cancellation of this Note shall be effective unless the change or cancellation is in writing and has been signed by the Note Holder and you.

## 11.  NOTE AS SECURITY INSTRUMENT

In addition to the protections given to the Note Holder under this Note, a mortgage, deed of trust, security agreement (giving Note Holder a security interest in shares of stock and a proprietary lease), security deed of trust, security deed, deed to secure debt or some other agreement (the "Security Instrument"), dated on or about the same day as this Note, protects the Note Holder from possible losses which might result if you do not keep the promises which you make in this Note. Pursuant to the terms of the Security Instrument, you are giving Note Holder a security interest in the Property, which Security Instrument secures all of your obligations to Note Holder under this Note and the Security Instrument. The Property is more fully described in the Security Instrument you will sign along with this Note. The Security Instrument describes how and under what conditions you may be required to make immediate payment in full of all amounts you owe under this Note. These conditions are described as follows in the Security Instrument (see sections 20 and 21 herein for other specific state requirements):

The Mortgage or Deed of Trust which covers the Property contains substantially the following provision:
Transfer of the Property or Beneficial Interest. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in you is sold or transferred and you are not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage or Deed of Trust. However, Lender shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Mortgage or Deed of Trust. If Lender exercises this option, Lender shall give you notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Mortgage or Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage or Deed of Trust without further notice of demand on you.

## 12.  APPLICATION OF PAYMENTS

All payments received by the Note Holder shall be applied, first, on account of interest due under this Note, second, on account of unpaid insurance, if any, relating to the Property, third, on account of principal due under this Note, and fourth, on account of all other fees or other charges owed under this Note, the Security Instrument or otherwise.

## 13.  TAX IMPLICATIONS

You should consult a tax advisor regarding the deductibility of interest and other charges (Finance Charges) under this Note.

## 14.  CO-BORROWER

If you sign this Note with more than one other co-borrower, you agree to be fully liable as the borrower for all amounts due under this Note and the Security Instrument. Upon a default under this Note, the Note Holder may sue either you individually or, instead, the Note Holder may elect to sue all of the co-borrowers.

## 15.  MODIFICATION

You cannot change any of the terms of this Note or of the Security Instrument without the Note Holder's prior written consent.

## 16.  CHANGE IN NAME, ETC.

You agree to notify us in writing of any change in name, address or employment.

## 17.  FURTHER ASSURANCES

You agree that, upon Note Holder's request, you will promptly execute, acknowledge, initial and deliver to Note Holder any documentation Note Holder deems necessary to replace or correct any lost, misplaced, misstated or inaccurate document signed by you at closing.

## FIXED RATE HOME EQUITY LOAN NOTE                citibank®

**18.  RIGHT OF SETOFF**

When you are in default, the law gives Note Holder the right, without prior notice to you, to apply the amounts in certain of your deposit accounts with Note Holder to whatever you owe Note Holder under this Note.

**19.  GOVERNING LAW**

The Note will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of California; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Note will be governed by the law of the state where the Property is located.

**20.  STATE LAW PROVISIONS**

THE FOLLOWING PROVISION SHALL APPLY ONLY FOR A LOAN MADE TO BORROWER(S) WHERE THE PROPERTY SECURING PAYMENT OF THE LOAN IS LOCATED IN **FLORIDA:**
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

THE FOLLOWING PROVISION SHALL APPLY ONLY FOR A LOAN MADE TO BORROWER(S) WHERE THE PROPERTY SECURING PAYMENT OF THE LOAN IS LOCATED IN **MAINE AND NEW YORK:**
If Note Holder requires immediate payment in full under Section 11 herein, Note Holder will give you a notice which states this requirement, following the procedures in Section 7 herein. The notice will give you at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If you do not make the required payment during that period, Note Holder may act to enforce its rights under the Security Instrument without giving you any further notice or demand for payment.

THE FOLLOWING PROVISION SHALL APPLY ONLY FOR A LOAN MADE TO BORROWER(S) WHERE THE PROPERTY SECURING PAYMENT OF THE LOAN IS LOCATED IN **VERMONT:**
**NOTICE TO CO-SIGNER:  Your signature on this Note means that you are equally liable for repayment of this loan. If the borrower(s) do not pay, the Note Holder has a legal right to collect from you.**

THE FOLLOWING PROVISION SHALL APPLY ONLY FOR A LOAN MADE TO BORROWER(S) WHERE THE PROPERTY SECURING PAYMENT OF THE LOAN IS LOCATED IN **ALASKA:**
To the extent set forth in this Note a mortgagor or trustor is personally obligated and fully liable for all amounts due under this Note, the Note Holder has the right to sue on this Note and obtain a personal judgment against the mortgagor or trustor for satisfaction of all amounts due under this Note either before or after a judicial foreclosure, under Alaska Statutes Sections 09.45.170 through 09.45.220 of the deed of trust which secured this Note.

THE FOLLOWING PROVISION SHALL APPLY ONLY FOR A LOAN MADE TO BORROWER(S) WHERE THE PROPERTY SECURING PAYMENT OF THE LOAN IS LOCATED IN **NEW HAMPSHIRE:**
Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that you shall prevail in (a) any action, suit or proceeding, brought by Note Holder, or (b) an action brought by you, reasonable attorneys' fees shall be awarded to you. Further, if you shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Note Holder, a court may withhold from the Note Holder the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

The undersigned Borrower(s), jointly and severally if more than one, agree to all of the terms and conditions of this Fixed Rate Home Equity Loan Note, which consists of nine pages, and acknowledge receipt of a completed copy. The date of this Note is the date set forth on the first page of this Note.

_____  04/28/2006     _____  04/28/2006
VICKI L FORESTER                                 LAWRENCE E FORESTER

5 of 5

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    Entered 04/05/20    Page 39 of 53
Case 6:10-bk-16163-WJ    Claim 15-1    Filed 04/06/20 16:59:44    Desc    Page 6 of 14

citibank®

## CITIBANK AUTO DEDUCT AGREEMENT AND AUTHORIZATION
## FOR FIXED RATE HOME EQUITY LOANS

Citibank, N.A., Citibank, F.S.B., Citibank Texas, N.A., or Citibank (West), FSB (each "Citibank") as applicable, is offering you the convenience of making payments using pre-authorized payments from a checking or savings account. In consideration of your voluntary election to make these automatic payments, Citibank agrees to waive the right to charge you the full interest rate as disclosed on your Fixed Rate Loan Note (your Loan Account number shown below) and to charge you the Fixed Rate Loan Note rate, less ¼ of 1% for as long as you continue to make your payments using pre-authorized payments from a checking or savings account with Citibank. This conditional waiver will only be included if Citibank Auto Deduct is from a Citibank Account.

This waiver of ¼ of 1% will remain in effect so long as you are enrolled for the auto-deduct service and comply with all of the terms and conditions of the service. If your enrollment is terminated for any reason, your interest rate will revert to the rate shown on your Fixed Rate Home Equity Loan Note. If the Citibank auto-deduct service is terminated, your new monthly payment amount will be based on the months remaining to satisfy the original term of the note and the outstanding principal balance, not the original loan amount.

**Terms and Conditions for Citibank Auto Deduct**
Your payment will be made automatically on your current due date from your designated Citibank account. If your due date falls on a weekend or holiday, your payment will be deducted on the last business day before your due date. If there are insufficient funds in the account, we may debit your account for the payment when sufficient funds are available. Your payment will be made automatically at the monthly due amount, as indicated on your loan statement.

Payments will be listed on your Citibank Checking, Savings, or Money Market Account statement, to help with record keeping. Even after signing up for Citibank Auto Deduct, continue to make payments with your statement until Citibank Auto Deduct is in place for your account, and until you see the deduction on your Checking, Savings or Money Market Account statement.

If you pay your account in full or to a level greater than the monthly payment due, you must notify Citibank in writing a minimum of 18 days prior to the next due date (at the address indicated on your statement), in order to stop the scheduled debit of the next monthly payment due on your loan.

Citibank reserves the right to cancel the terms of this Agreement if there are insufficient funds in your Citibank account for any three consecutive scheduled debits or if any payment is 60 days in arrears. Citibank also reserves the right to change the terms and conditions of this Agreement after 31 days prior notice to you.

**Authorization**
By signing below, you authorize Citibank, N.A., Citibank, F.S.B., Citibank Texas, N.A., or Citibank (West), FSB to initiate withdrawals from your Citibank Checking, Money Market, or Savings Account for payment of the monthly payment, as specified on your loan statement, due on your Fixed Rate Home Equity Loan Note (Loan Account number listed below). If there are insufficient funds in the account, you understand that Citibank may debit your account when sufficient funds are available.

Name: _Lawrence & Vicki Forester_
Address: _4525 Center Ave_                    Account Type: [✓] Checking  [ ] Money Market  [ ] Savings
_Norco, CA. 92860_                            Account Number: _____
                                             Routing Number: _____

_Vicki Forester_    4/28/06    _Lawrence E. Forester_    4/28/06
                                                                    Date

Page 1 of 6
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

03/23/2006 08:00A Fee:24.00

Record & Return:
*Progressive Closing & Escrow Comp*
50 Vantage Point Drive, Suite 3
Rochester, NY 14624

**This Instrument Was Prepared By:**
BINDIYA GARASIA
Citibank
P.O. Box 790017, MS 221
St. Louis, MO 63179
(800) 925-2484

| | M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| A | R | L | | | | COPY | LONG | REFUND | NCHG | EXAM |

# DEED OF TRUST

   THIS DEED OF TRUST is made this **04/28/2006**, among the Trustor, **LAWRENCE FORESTER AND VICKI FORESTER, HUSBAND AND WIFE AS JOINT TENANTS**, of **4525 CENTER AVENUE, NORCO, CA  92860-1512**, (herein "Trustor") Verdugo Trustee Service Corporation (herein "Trustee"), and the Beneficiary, Citibank (West), FSB ("beneficiary"), a corporation organized and existing under the laws of the United States of America whose address is **One Sansome St., San Francisco, CA  94104** (herein "Lender").  "Borrower" means  the individual(s) who has(ve) signed the Fixed Rate Home Equity Loan Note (the "Note") of even date herewith and in connection with this Deed of Trust.

   Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **RIVERSIDE**, State of California:

### SEE ATTACHED RIDER FOR LEGAL DESCRIPTION

which has the address of **4525 CENTER AVENUE, NORCO, CA  92860-1512** (herein "Property Address").

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

   TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **04/28/2006** and extensions and renewals thereof (herein "Note"), in the principal sum of U.S.**$115,000.00**, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **05/04/2036**; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

   Trustor covenants that Trustor is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record.  Trustor covenants that Trustor warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

   UNIFORM COVENANTS.  Trustor and Lender covenant and agree as follows:

   **1. Payment of Principal and Interest.**  Trustor shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
   **2. Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender shall be applied by Lender first to interest payable on the Note and then to the principal of the Note.

| CALIFORNIA - Second Mortgage - **FNMA/FHLMC UNIFORM INSTRUMENT** |
|---|

1 of 5

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    04/06/20    Page 41 of 53    04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Claim 10 Document    Page 91 of 125 Desc docs    Page 8 of 14

**citibank®**

## Deed of Trust, continued

**3. Prior Mortgages and Deeds of Trust; Charges; Liens.** Trustor shall perform all of Trustor's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Trustor's covenants to make payments when due. Trustor shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**4. Hazard Insurance.** Trustor shall keep the improvement now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Trustor subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Trustor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Trustor.

If Property is abandoned by Trustor, or if Trustor fails to respond to Lender within 30 days from the date notice is mailed by Lender to Trustor that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect any apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**5. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Trustor shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Trustor shall perform all of Trustor's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**6. Protection of Lender's Security.** If Trustor fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Trustor, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Trustor shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Trustor's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 6, with interest thereon, at the Note rate, shall become additional indebtedness of Trustor secured by this Deed of Trust. Unless Trustor and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Trustor requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

**7. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Trustor notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**8. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**9. Trustor Not Released; Forbearance by Lender Not a Waiver** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Trustor shall not operate to release, in any manner, the liability of the original Trustor and Trustor's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Trustor and Trustor's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Trustor, subject to the provisions of paragraph 15 hereof. All covenants and agreements of Trustor shall be joint and several. Any Trustor who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Trustor's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Trustor hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Trustor's consent and without releasing that Trustor or modifying this Deed of Trust as to that Trustor's interest in the Property.

2 of 5

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    04/06/20  Page 42 of 53    04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Main Document    Filed 09/06/11  Page 9 of 14  Desc  docs    Page 9 of 14

**citibank**®

**Deed of Trust, continued**

**11. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Trustor provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Trustor at the Property Address or at such other address as Trustor may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Trustor as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Trustor or Lender when given in the manner designated herein.

**12. Governing Law; Severability.** The Deed of Trust will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of California; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Deed of Trust will be governed by the law of the state where the Property is located.

**13. Trustor's Copy.** Trustor shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**14. Rehabilitation Loan Agreement.** Trustor shall fulfill all of Trustor's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Trustor enters into with Lender. Lender, at Lender's option, may require Trustor to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Trustor may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**15. Transfer of the Property or a Beneficial Interest in Trustor.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Trustor is sold or transferred and Trustor is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Trustor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Trustor must pay all sums secured by this Deed of Trust. If Trustor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Trustor.

**NON-UNIFORM COVENANTS.** Trustor and Lender further covenant and agree as follows:

**16. Acceleration; Remedies.** Except as provided in paragraph 15 hereof, upon Trustor's breach of any covenant or agreement of Trustor in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Trustor as provided in paragraph 11 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Trustor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Trustor of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 16, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the person and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Trustor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

Case 6:10-bk-16163-WJ   Doc 140   Filed 03/10/21   Entered 03/10/21 17:45:33   Desc
Case 6:10-bk-16163-WJ   Main Document   04/06/age 43 of 53 04/06/20 16:59:44   Desc
Case 6:10-bk-16163-WJ   Main Document   Page 02 of 125   Desc docs   Page 10 of
14

**citibank®**

## Deed of Trust, continued

**17. Trustor's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Trustor's breach, Trustor shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Trustor pays Lender all sums which would then be due under this Deed of Trust and the Note had no acceleration occurred; (b) Trustor cures all breaches of any other covenants or agreements of Trustor contained in this Deed of Trust; (c) Trustor pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Trustor contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Trustor takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Trustor's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Trustor, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration occurred.

**18. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Trustor hereby assigns to Lender the rents of the Property, provided that Trustor shall, prior to acceleration under paragraph 16 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 16 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**19. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**20. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Trustor, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Trustor requests that copies of the notice of default and notice of sale be sent to Trustor's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**22. Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Case 6:10-bk-16163-WJ   Doc 140   Filed 03/10/21   Entered 03/10/21 17:45:33   Desc
Case 6:10-bk-16163-WJ   Main Document 04/06/20   Page 44 of 52 04/06/20 16:59:44   Desc
Case 6:10-bk-16163-WJ   Main Document   Page 2130/25   Desc docs   Page 11 of
14

**citibank**®

Deed of Trust, continued

**REQUEST FOR NOTICE OF DEFAULT**
**AND FORECLOSURE UNDER SUPERIOR**
**MORTGAGES OR DEEDS OF TRUST**

Trustor and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IT WITNESS WHEREOF, Trustor has executed this Deed of Trust.

| | |
|---|---|
| *[signature]*     04/28/2006 | *[signature]*     04/28/2006 |
| Trustor: VICKI FORESTER | Trustor: LAWRENCE FORESTER |
| [✓] Married    [ ] Unmarried | [✓] Married    [ ] Unmarried |
| Trustor: | Trustor: |
| [ ] Married    [ ] Unmarried | [ ] Married    [ ] Unmarried |
| [ ] Married    [ ] Unmarried | [ ] Married    [ ] Unmarried |

STATE OF CALIFORNIA
COUNTY OF *Riverside*

On **04/28/2006**, before me, *C.L. Mobley - Notary Public*,
personally appeared **VICKI FORESTER and LAWRENCE FORESTER**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the same person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature    *C.L. Mobley*

*[notary seal]*
C. L. MOBLEY
COMM. # 1597286
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
COMM. EXP. JULY 25, 2009

**REQUEST FOR RECONVEYANCE**

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated:

5 of 5

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document 04/06/20 45 of 53 04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Claim 10-1 Part 2    Filed 09/30/11    Desc    docs    Page 12 of
Main Document 14    Page 22 of 25



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing
Mail Stop 7-13
250 E Street, SW
Washington, DC 20219

October 11, 2006

Mr. James E. Scott
Assistant General Counsel
Citigroup, Inc.
425 Park Avenue
New York, New York 10022

Re: Applications by Citibank, N.A., Citibank (South Dakota), N.A., and certain affiliates to
    internally reorganize and consolidate certain banking and credit card operations.

Dear Mr. Scott:

This letter is the official acknowledgement, authorization and certification by the Office of the
Comptroller of the Currency (OCC) for the applications pertaining to an internal reorganization
of various Citigroup, Inc. subsidiaries and affiliates. The transactions will combine a significant
portion of Citigroup, Inc.'s domestic commercial and retail banking operations into Citibank,
National Association, New York, New York, and its credit card operations into Citibank (South
Dakota), N.A., Sioux Falls, South Dakota.

The OCC certifies and/or authorizes the following application:

Concerning the conversion of Citibank, Federal Savings Bank, Reston, Virginia to a national
banking association under the title of CFSB, National Association: The OCC has reviewed and
found no exception to the documents submitted by Citibank, Federal Savings Bank to complete
the conversion process. As such, Citibank, Federal Savings Bank is authorized to commence
business as a national bank as of October 1, 2006. This is also the official authorization given to
CFSB, National Association to operate the former federal thrift branches as national bank
branches. A listing of each newly authorized branches and its assigned OCC branch number is
attached. Application Control Number

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    Page 46 of 53 04/06/20 16:59:44    Desc
Case 6:10-bk-16163-WJ    Claim 10-1 Part 2    Filed 03/10/21 Desc docs 04/06/20 Page 13 of
Main Document14    Page 23 of 25

Citigroup, Inc,
Internal Reorganization
Page 2

Concerning the conversion of Citibank (West), FSB, San Francisco, California to a national banking association under the title of West, National Association: The OCC has reviewed and found no exception to the documents submitted by Citibank (West), FSB to complete the conversion process. As such, Citibank (West), FSB is authorized to commence business as a national bank as of October 1, 2006. This is also the official authorization given to West, National Association to operate the former federal thrift branches as national bank branches. A listing of each newly authorized branches and its assigned OCC branch number is attached. Application Control Number

This letter serves as the official OCC certification that effective October 1, 2006 CFSB, National Association, Reston, Virginia; West, National Association, San Francisco, California; Citibank Texas, National Association, Dallas, Texas and Citibank (Delaware), New Castle, Delaware merged with and into Citibank, National Association, New York, New York, under the title of Citibank, National Association, with the resulting location of 3900 Paradise Road, Suite 127, Las Vegas, Nevada, under charter number 1461. Citibank, National Association, Las Vegas, Nevada is officially authorized to operate the branches of the target institutions and the main offices of the target institutions as branches. Branches of a national bank targets are automatically carried over to the resulting bank and retain their current OCC branch numbers. Application Control Number:

It is the OCC's understanding that Citibank (Banamex USA), Century City, California will not merge into Citibank, National Association, Las Vegas, Nevada until 2007. Citibank, National Association, Las Vegas, Nevada must provide the Large Bank Licensing Lead Expert with prior written notice of the date of the consummation of this merger in order for it to be officially certified by the OCC. You are reminded that the approval for this merger expires twelve months from August 3, 2006, the date of the OCC's approval of the merger. Application Control Number:

This letter serves as the official OCC certification that effective October 1, 2006 Citicorp Trust, National Association, Los Angeles, California, merged with and into Citibank, National Association, Las Vegas, Nevada, under the title of Citibank, National Association and charter number 1461. Application Control Number:

This letter serves as the official OCC certification that effective October 1, 2006 Citibank USA, National Association, Sioux Falls, South Dakota and Citibank (Nevada), National Association. Las Vegas, Nevada merged with and into Citibank (South Dakota), N.A. Sioux Falls, South Dakota under the title of Citibank, (South Dakota), National Association, charter number 16971. Application Control Number:

This letter serves as the official OCC certification that effective October 1, 2006 Citibank (South Dakota), National Association, (charter number 16971) Sioux Falls, South Dakota, acquired substantially all of the assets and liabilities of Universal Financial Corp, Salt Lake City, Utah. Application Control Number:

Citigroup, Inc,
Internal Reorganization
Page 3

This letter serves as the official OCC certification, effective October 1, 2006, of a $14.7 billion decrease in Citibank, National Association, Las Vegas, Nevada's surplus capital account as a result of a dividend-in-kind to its sole shareholder, Citicorp Holdings, in the form of the transfer of the stock of Citibank (South Dakota), N.A., a subsidiary of Citibank, National Association. Application Control Number:

Effective October 1, 2006 the following transactions approved by the OCC on August 3, 2006 were also consummated:

Citibank, National Association, Las Vegas, Nevada effected its change in bank control to acquirer Citigroup Trust – Delaware, National Association, 824 Market Street, Wilmington, Delaware as an operating subsidiary.  Application Control Numbers:

Citibank (South Dakota), N.A., Sioux Falls, South Dakota effected its change in bank control to acquire Department Stores National Bank, 701 East 60ᵗʰ Street, Sioux Falls, South Dakota thru a material non-cash contribution of stock from Citibank, National Association, Las Vegas, Nevada and to operate Department Stores National Bank as an operating subsidiary.  Application Control Numbers

Citibank (South Dakota), N.A. received from Citibank, National Association a material non-cash contribution to surplus of $824 million in the form of the stock of Department Stores National Bank, Citicorp Credit Services, Inc. (USA) and Citicorp Payment Services, Inc.  Application Control Number

If you have questions regarding this letter, please contact me at            or by email at: stephen.lybarger@occ.treas.gov .  Please reference the application control number or numbers in any correspondence.

Sincerely,

*Stephen A. Lybarger*

Stephen A. Lybarger
Director for Licensing Activities

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**



05/23/2006 08:00A Fee:24.00
Page 1 of 6
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Record & Return:
*Progressive Closing & Escrow Comp*
50 Vantage Point Drive, Suite 3
Rochester, NY 14624

**This Instrument Was Prepared By:**
BINDIYA GARASIA
Citibank
P.O. Box 790017, MS 221
St. Louis, MO 63179
(800) 925-2484

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
| 1 | | | ✓ | | 1 | | | | |
| A | R | L | | | COPY | LONG | REFUND | NCHG | EXAM |

24
C
LA

# DEED OF TRUST

THIS DEED OF TRUST is made this **04/28/2006**, among the Trustor, **LAWRENCE FORESTER AND VICKI FORESTER, HUSBAND AND WIFE AS JOINT TENANTS.** of **4525 CENTER AVENUE, NORCO, CA  92860-1512**, (herein "Trustor") Verdugo Trustee Service Corporation (herein "Trustee"), and the Beneficiary, Citibank (West), FSB ("beneficiary"), a corporation organized and existing under the laws of the United States of America whose address is **One Sansome St., San Francisco, CA  94104** (herein "Lender"). "Borrower" means the individual(s) who has(ve) signed the Fixed Rate Home Equity Loan Note (the "Note") of even date herewith and in connection with this Deed of Trust.

Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **RIVERSIDE**, State of California:

### SEE ATTACHED RIDER FOR LEGAL DESCRIPTION

which has the address of **4525 CENTER AVENUE, NORCO, CA  92860-1512** (herein "Property Address").

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **04/28/2006** and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. **$115,000.00**, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **05/04/2036**; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect that security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Trustor covenants that Trustor is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record.  Trustor covenants that Trustor warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS.  Trustor and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.**  Trustor shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
**2. Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender shall be applied by Lender first to interest payable on the Note and then to the principal of the Note.

| **CALIFORNIA -** Second Mortgage - **FNMA/FHLMC UNIFORM INSTRUMENT** |
|---|

1 of 5

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    Page 50 of 53
Claim 10-1 Part 2    Filed 09/30/11    Desc docs    Page 8 of 14

**citibank**

## Deed of Trust, continued

**3. Prior Mortgages and Deeds of Trust; Charges; Liens.** Trustor shall perform all of Trustor's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Trustor's covenants to make payments when due. Trustor shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**4. Hazard Insurance.** Trustor shall keep the improvement now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Trustor subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Trustor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Trustor.

If Property is abandoned by Trustor, or if Trustor fails to respond to Lender within 30 days from the date notice is mailed by Lender to Trustor that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect any apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**5. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Trustor shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Trustor shall perform all of Trustor's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**6. Protection of Lender's Security.** If Trustor fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Trustor, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Trustor shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Trustor's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 6, with interest thereon, at the Note rate, shall become additional indebtedness of Trustor secured by this Deed of Trust. Unless Trustor and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Trustor requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

**7. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Trustor notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**8. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**9. Trustor Not Released; Forbearance by Lender Not a Waiver** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Trustor shall not operate to release, in any manner, the liability of the original Trustor and Trustor's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Trustor and Trustor's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Trustor, subject to the provisions of paragraph 15 hereof. All covenants and agreements of Trustor shall be joint and several. Any Trustor who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Trustor's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Trustor hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Trustor's consent and without releasing that Trustor or modifying this Deed of Trust as to that Trustor's interest in the Property.

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    Page 51 of 53
Claim 10-1 Part 2    Filed 09/30/11    Desc docs    Page 9 of 14

**citibank®**

## Deed of Trust, continued

**11. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Trustor provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Trustor at the Property Address or at such other address as Trustor may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Trustor as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Trustor or Lender when given in the manner designated herein.

**12. Governing Law; Severability.** The Deed of Trust will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of California; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Deed of Trust will be governed by the law of the state where the Property is located.

**13. Trustor's Copy.** Trustor shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**14. Rehabilitation Loan Agreement.** Trustor shall fulfill all of Trustor's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Trustor enters into with Lender. Lender, at Lender's option, may require Trustor to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Trustor may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**15. Transfer of the Property or a Beneficial Interest in Trustor.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Trustor is sold or transferred and Trustor is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Trustor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Trustor must pay all sums secured by this Deed of Trust. If Trustor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Trustor.

**NON-UNIFORM COVENANTS.** Trustor and Lender further covenant and agree as follows:

**16. Acceleration; Remedies.** Except as provided in paragraph 15 hereof, upon Trustor's breach of any covenant or agreement of Trustor in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Trustor as provided in paragraph 11 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Trustor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Trustor of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 16, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the person and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Trustor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

Case 6:10-bk-16163-WJ    Doc 140    Filed 03/10/21    Entered 03/10/21 17:45:33    Desc
Case 6:10-bk-16163-WJ    Main Document    Page 52 of 53
Claim 10-1 Part 2    Filed 09/30/11    Desc  docs    Page 10 of
14

Deed of Trust, continued                                         **citibank**®

17. **Trustor's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Trustor's breach, Trustor shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Trustor pays Lender all sums which would then be due under this Deed of Trust and the Note had no acceleration occurred; (b) Trustor cures all breaches of any other covenants or agreements of Trustor contained in this Deed of Trust; (c) Trustor pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Trustor contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Trustor takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Trustor's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Trustor, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration occurred.

18. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Trustor hereby assigns to Lender the rents of the Property, provided that Trustor shall, prior to acceleration under paragraph 16 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 16 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

19. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or person legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

20. **Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Trustor, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

21. **Request for Notices.** Trustor requests that copies of the notice of default and notice of sale be sent to Trustor's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

22. **Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Case 6:10-bk-16163-WJ   Doc 140   Filed 03/10/21   Entered 03/10/21 17:45:33   Desc
Case 6:10-bk-16163-WJ   Main Document   Page 53 of 53
Claim 10-1 Part 2   Filed 09/30/11   Desc docs   Page 11 of
14

**Deed of Trust, continued**                                    **citi**bank®

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Trustor and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IT WITNESS WHEREOF, Trustor has executed this Deed of Trust.

| _(signature)_ | 04/28/2006 | _(signature)_ | 04/28/2006 |
|---|---|---|---|
| Trustor: VICKI FORESTER | | Trustor: LAWRENCE FORESTER | |
| [✓] Married | [ ] Unmarried | [✓] Married | [ ] Unmarried |

| Trustor: | | Trustor: | |
|---|---|---|---|
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |

| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |

STATE OF CALIFORNIA
COUNTY OF _Riverside_

On **04/28/2006**, before me, _C.L. Mobley - Notary Public_,
personally appeared **VICKI FORESTER and LAWRENCE FORESTER**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the same person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____C.L. Mobley_____

_(notary seal)_
C. L. MOBLEY
COMM. # 1597286
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
COMM. EXP. JULY 25, 2009

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: